**Binnie LAZARUS, as mother and natural guardian of Shari Kurtz, et al., Plaintiff,**

v.

**Caspar WEINBERGER, as Secretary of United States Department of Health, Education, and Welfare, Defendant.**

**No. 75 C 366.**

United States District Court, E. D. New York.

Sept. 8, 1975.

David G. Trager, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., by David McMorrow, Asst. U. S. Atty., for defendant.

Martin B. Adelman, New York City, for plaintiff.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

This is an action, pursuant to 42 U.S. C. § 405(g), to review the final determination of the Secretary of Health, Education, and Welfare which denied survivor's benefits to plaintiff's three children. Both parties have moved for an order granting judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ. P.

On April 29, 1971, plaintiff filed an application for surviving childrens' insurance benefits under the Social Security Act, 42 U.S.C. § 402(d)(1), on the ground that wage-earner, Larry Kurtz, plaintiff's former husband and father of three minor children, had been continuously and unexplainedly absent since his disappearance on January 30, 1964. The transcript, upon which this Court must base its decision, reveals that Kurtz, who had been recently divorced from his wife, Mrs. Lazarus, the plaintiff herein, was living with his parents and working at the same job from 1955 until his disappearance. In 1962, Kurtz had begun gambling, and had incurred considerable gambling debts. He and his family had been threatened, allegedly by bookmakers. Kurtz had no record of arrest nor any known trouble with the law; the record evidences that the wage-earner was a non-drinker, devoted to his children and close to his family.

On January 28, 1964, Kurtz went to work as usual. He collected his pay, went out to lunch, and never returned, leaving his belongings behind. He mailed a note to his mother stating that he had to leave town for a few days. Numerous efforts aimed at finding Kurtz were made in the eleven years since he disappeared, but to no avail. No income has ever been reported for Kurtz at any Social Security office. In short, Kurtz has vanished.

Kurtz's wife, the plaintiff Lazarus (subsequently remarried), initially and prematurely applied for benefits on behalf of her three children in 1966. Citing the facts set forth above, she was advised that it was necessary to wait seven years from the date her former husband disappeared. In 1971, she reapplied. A first determination denied benefits. The plaintiff sought an administrative hearing to review the case. Testimony was heard before Administrative Law Judge Powell. Judge Powell's decision was that wage-earner Kurtz must be presumed dead, pursuant to 20 C.F.R. 404.705 which provides:

> Whenever it is necessary to determine the death of an individual in order to determine the right of another to a . . . benefit . . ., and such individual has been unexplainedly absent from his residence and unheard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died.

Judge Powell's decision, which afforded benefits to the claimants herein, was reviewed and reversed by the Social Security Administration Appeals Council on its own motion. In its reversal, the Appeals Council held that:

> Where the circumstances surrounding the departure of the missing person are such that his absence can be rea-

sonably explained without inferring his death, his absence, notwithstanding its duration, is not "unexplained" within the meaning of the regulation. (R. 17).

The Appeals Council formulated its "explanation" as follows:

The wage earner's evident domestic problems . . . , his heavy debt . . . , and his affiliation with the underworld, which constituted a threat to his family, add up to a combination of problems which provide a reasonable explanation for his continued absence without tidings. (R. 8)

The opinion cited *Dowell v. Gardner,* 386 F.2d 809 (6th Cir. 1967), a case in which an insured individual's absence for an extensive period was, in fact, explained. The Appeals Council rejected the contention of plaintiff herein that, were Kurtz alive, the close family relationships which he had cherished would have impelled him to establish some minimal contact with parents or children during his "hiding-out."

The Appeals Council relied in part on an unsworn statement of one William Fromick, as expressed in a memorandum of a telephone conversation between a Social Security employee and Mr. Fromick. Fromick claimed first, that wage-earner Kurtz had co-signed a loan for him in April, 1964, four months after Kurtz's contact with his family had ceased and, second, that he had seen Kurtz at Madison Square Garden in July, 1964. Six months had elapsed between Kurtz's last contact with his family and this purported "sighting". According to the Council, what might have constituted evidence of Kurtz's death (i. e., the lack of contact between close family members) was weakened by the Fromick evidence that Kurtz was alive for six months and, during that time, failed to communicate with his family. The Council opined that Kurtz's absence could be explained as an effort "to protect his parents from molestation from the underworld. When it became

clear . . . that neither his wife nor parents were aware of his whereabouts, the threats ceased." (R. 8)

The decision of the Appeals Council stands as the final determination of the Secretary of Health, Education, and Welfare. 42 U.S.C. § 405(g) requires this court to affirm the findings of the Secretary if supported by "substantial evidence".

Plaintiff contends that the Secretary's decision is erroneous and unsupportable, based rather on conjecture and speculation than on substantial evidence, and that the Appeals Council misapplied the legal standard with respect to the presumption of death, codified in 20 C.F.R. 404.705, *supra.* Specifically, plaintiff argues that an insurmountable burden has been created by the defendant-Secretary when, it is claimed, *any* explanation of a wage-earner's disappearance will be acceptable to defeat the presumption of death. Additionally, plaintiff argues that the Secretary relied, unduly, on the hearsay statement of witness Fromick, who, significantly, refused to reaffirm his statement directly to plaintiff or her attorney. It is claimed that such evidence, although admissable in an administrative proceeding, can hardly be "substantial". Furthermore, plaintiff urges that, regardless of the weight given to Fromick's testimony, the alleged sighting of the wage-earner, which was the only evidence of continued life, occurred well before the seven year period prior to the hearing which was held in April, 1974.

The defendant, Secretary of Health, Education, and Welfare urges that it findings of fact are supported by substantial evidence and, therefore, entitled to conclusive effect.

■ The scope of judicial review of a Social Security decision is limited to a determination of whether the Secretary's findings were supported by substantial evidence, based on the record in its entirety. 5 U.S.C. § 706(2)(E). In a case such as this, where the Appeals Council overturned the findings of its

hearing examiner, the fact that the same evidence yielded conflicting inferences merits consideration by the reviewing court. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 496–7, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951); *Procter & Gamble Co. v. F.T.C.*, 358 F.2d 74, 83 (6th Cir. 1966), cert. granted, 385 U.S. 897, 87 S.Ct. 202, 17 L.Ed.2d 129, rev'd on other grounds, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303. However, the substantial evidence standard is not modified by the fact that there have been conflicting decisions.

In *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939), the Supreme Court defined substantial evidence as evidence which "is more than a scintilla, and [which] must do more than create a suspicion of the existence of the fact to be established."

█ The sole question before the Secretary on the case under review was whether the wage-earner, Larry Kurtz, was dead. Since no direct proof of the fact of death was available, the regulation relating to the presumption of death was invoked. That regulation calls for a "satisfactory establishment of . . . facts" to show that the individual has been "unexplainedly absent from his residence and unheard of for a period of seven years . . . ." 20 C.F.R. § 404.705. In order to dissipate the presumption, there must be "evidence to the contrary." In the case at bar, plaintiff Lazarus undeniably established that Kurtz had vanished, without explanation, for the seven year period. Once the presumption has been established, "[t]he burden of explanation then shifts to the Secretary." *Gardner v. Wilcox*, 370 F.2d 492, 494 (9th Cir. 1966); *Aubrey v. Richardson*, 462 F.2d 782, 784 (3d Cir. 1972).

█ Upon considering this case in light of the presumption, this court finds no substantial evidence to support the Secretary's inference that Larry Kurtz was not dead. Indeed, the evidence in this case could yield no more than a "suspicion" that Kurtz may be alive. Such conjecture is insufficient to meet the test of "substantial evidence." Cf. *N.L.R.B. v. Columbian Enameling & Stamping Co., supra; Aubrey v. Richardson, supra.*

The reliance of the Appeals Council on the case of *Dowell v. Gardner*, 386 F.2d 809 (6th Cir. 1967) was misplaced. In that case, the facts revealed hostility between the missing wage-earner and his family, great enough to impel Dowell to burn down his family trailer before he disappeared. Dowell also had a record of previous family desertion and "unexplained absences." He had been sent to jail for nonsupport. After Dowell "disappeared", earnings were reported for him in a distant city. In short, a set of facts existed in that case which could have met the standard of "substantial evidence" to support an inference of another "explained" absence on the part of the wage-earner therein.

We find that such was not the case here. Kurtz, although divorced, seemed settled. There was evidence of Kurtz's stability in that he held the same job for a considerable time. There was evidence of his sobriety and his law-abiding disposition. Kurtz had made no preparations to leave. Diligent searches were made by family members, with whom Kurtz, by virtue of his close family ties, would be likely to communicate, at least after years had gone by and threats had ceased. The family's testimony before the hearing examiner was sufficient to convince him that Kurtz would contact his family if alive, and that, in view of the record before him, it could be inferred that the threats on Kurtz's life had been effectuated.

█ Indeed, the only evidence of continued life before the Administration was the hearsay statement of Fromick, as detailed above. Fromick's unsworn account of sighting Kurtz after the latter's last family contact gave fuel to the Appeals Council's theory that Kurtz was still alive eleven years after he vanished.

Such purported sighting, however, if it occurred at all, happened at a time when threats on Kurtz's family were still fresh; it is hardly a viable explanation, in light of Kurtz's previous record, for a determination that Kurtz would sever all relations years later. Furthermore, while Fromick's statement may be admissible, a hearsay statement, uncorroborated and, in this case, unreaffirmed, does not constitute substantial evidence. *Consolidated Edison Company v. N.L.R. B.*, 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed.2d 126 (1938). Even if Fromick's account is believed, there is no evidence in the record of any kind which supports a finding that Kurtz was alive subsequent to July, 1964. A seven-year time period, during which Kurtz was absent without explanation should be computed from that time.

In *Secretary of Health, Education, and Welfare v. Meza*, 368 F.2d 389 (9th Cir. 1966), the wage-earner had deserted his second wife for six years, but was found to be alive and working in a distant city after that time. Nonetheless, after the wage-earner had disappeared for another seven year period, it was found that there was no proof of facts as to constitute substantial evidence to dissipate the presumption of death which was inferrable from the later seven-year unexplained absence.

The *Meza* court held that, although the first absence was "explained", the second was not, and that the claimant had satisfied her burden of proof with respect to the wage-earner's disappearance:

> The most that the applicant can be expected to do is to show . . . that the applicant has no explanation [for the wage-earner's prolonged absence]. We think that the true meaning of the regulation is that when the facts show that a person has been absent from his residence and unheard of for a period of seven years, a presumption arises that he is dead. Such a presumption is based upon the fact that people do not ordi-

narily disappear for no apparent reason and sever a long established pattern of living and all contacts with family and friends.

368 F.2d at 392. To require more from a claimant "would place an impossible burden of showing a negative upon an applicant . . . ." 368 F.2d at 392. Once an absence without explanation is proved by the claimant, the burden rests with the Secretary.

Similarly, in the case of *Aubrey v. Richardson*, 462 F.2d 782, 784-5 (3d Cir. 1972), the court stated that:

> The Secretary contends that if he believes that there is a cogent explanation for the disappearance consistent with continued life, he can properly refuse to apply the presumption. Thus, in the Secretary's view, no affirmative evidence that the insured is alive is necessary. We disagree.

> The Appeals Council's rationale virtually creates a presumption of life rather than death. There is nothing in the regulation which requires the claimant to refute every reasonable theory or explanation which may be potentially present or which the Secretary may suggest.

> . . . [S]uch a view would frustrate the purpose of the presumption and eternally render its effect nugatory.

We agree with the *Aubrey* court and adopt its conclusion. We hold that, in the case at bar, the Secretary's failure to apply the presumption is unsupportable by the record before us, in that there is no substantial evidence of wage-earner Kurtz's continued life.

Accordingly, it is ordered that the decision of the Secretary which denies benefits to plaintiff Lazarus and her three children be and the same is reversed.

It is further ordered that the decision of the hearing examiner, Judge Powell, which affords benefits to claimants herein, be reinstated, and that payments be made to plaintiff in accordance with

42 U.S.C. § 402(d)(1). Such award of benefits shall be made retroactive to the applicable date.

Plaintiff's motion for judgment on the pleadings is hereby granted.

So ordered.