Lucille **MITCHELL**, Plaintiff,

v.

Patricia Roberts **HARRIS**, Secretary of Health, Education and Welfare, Defendant.

**Civ. A. No. 78–2706.**

United States District Court, D. New Jersey.

Sept. 2, 1980.

---

Hudson County Legal Services Corp. by Theodore A. Gardner, Jersey City, N. J., for plaintiff.

William W. Robertson, U. S. Atty., Newark, N. J. by Elizabeth T. Barlow, Asst. U. S. Atty., Newark, N. J., for defendant.

## OPINION

MEANOR, District Judge.

I

This case presents a novel response to a not–so–novel dilemma: The statutory bar on retroactive social security benefits affecting potential beneficiaries who have failed to make timely application for such benefits.

The uncontested facts are as follows: for 24 years prior to 1968, plaintiff Lucille Mitchell worked as a laborer in a cafeteria and, thereafter, as a packer in the garment industry. During this period, social security taxes were deducted from her wages. Plaintiff ceased working in mid–1968 due to failing eyesight and constant fatigue, and she and her three children lived on public assistance for the next several years.

Plaintiff filed an application for disability benefits on July 11, 1977 (Tr. 20–23), alleging disability as a result of a thyroid condition and the removal of a kidney. The application was denied initially (Tr. 25–27) and on reconsideration (Tr. 30–32). Mitchell requested a hearing to review the application (Tr. 33) but on April 27, 1978, an Administrative Law Judge ("ALJ") considered the case *de novo*, determined that a hearing was unnecessary and awarded plaintiff a period of disability and disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, as amended. The ALJ determined that plaintiff had become disabled on July 1, 1968 and that the disability had continued up to the date of the administrative decision (Tr. 16). However, the payment of retroactive benefits was limited to the period commencing July 11, 1976–one year prior to the date of filing of plaintiff's application pursuant to 42 U.S.C. § 423(b), which provides in pertinent part:

An individual who would have been entitled to a disability insurance benefit for any month had he filed application therefor before the end of such month shall be entitled to such benefit for such month if such application is filed before the end of the 12th month immediately succeeding such month.

Plaintiff claims entitlement to retroactive benefits for the period December 1, 1968[1] to July 11, 1976, asserting that the one year limitation on the payment of retroactive benefits under § 423(b) should be held unconstitutional as applied to her. The gravamen of plaintiff's claim is that the alleged

---

1. There is a five month waiting period from the onset of disability before an individual is eligible to receive disability benefits. *See* 42 U.S.C. § 423(a)(1), (c)(2).

failure of the Social Security Administration to institute mandatory measures or procedures to ensure transmittal of information to her [2] regarding the scope of the program's benefits unconstitutionally deprived her of property without due process of law and deprived her of her right to the equal protection of the laws.

The issues before the court, therefore, are whether the filing of an application is a condition precedent to the receipt of disability benefits under the Social Security Act, and whether Congress can constitutionally enact such a condition, along with the limitations on retroactive payments, as a means of preserving the fiscal integrity of the social security fund. The court answers both these questions in the affirmative and grants defendant's motion for summary judgment.

## II

That the plain meaning of § 423(b) bars plaintiff from recovering the eight years of benefits for which she was eligible, and that it is within Congress' power to so limit the payment of retroactive benefits, would seem to be beyond reasonable dispute, yet time and again federal courts have been called upon to sustain this and analogous provisions of the Social Security Act in the face of challenges to their constitutionality. An untimely application for survivor's benefits under the Social Security Act was held to preclude payment of benefits extending more than three months prior to the date of the filing of the application in *Borysuk v. Ewing*, 96 F.Supp. 779 (D.N.J.1951). There the court stated:

It is clear Congress intended that an application would be a condition precedent to the right to benefits under the act, and an applicant, until an application has been filed, would be entitled only to the retroactive period of three months given to the applicant by the statute on filing of the delayed application. Hence, the plaintiff and the two children entitled to insurance benefits have received all to which they were entitled.

96 F.Supp. at 781. Plaintiff's ignorance as to eligibility was found to have no bearing on the application of the statutory bar.

Lest there be any doubt that equitable considerations are irrelevant in this context, the financial hardship "resulting from innocent ignorance" was found to carry no weight in *Flamm v. Ribicoff*, 203 F.Supp. 507 (S.D.N.Y.1961), where the court stated:

Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from Government agents or employees. Failure to comply with the applicable statute and regulations precludes recovery against the Government "no matter with what good reason" the claimant believed she had come within the requirements.

*Id.* at 510. In *Flamm*, the court rejected the contention that the government should be estopped from invoking the one year limitation period on the retroactive payment of widow's benefits, even though the delay in filing an application for such benefits may have been caused by misinformation received from the local social security office.

On all fours with the present case is *Sweeney v. Secretary of H.E.W.*, 379 F.Supp. 1098 (E.D.N.Y.1974), where the court affirmed the Secretary's literal application of the statutory requirements of § 423 and limited the payment of retroactive benefits to an individual who had been involved in a serious automobile accident. In *Sweeney*, the plaintiff argued that the fact that he had been hospitalized for almost an entire year for treatment of injuries sustained in the accident, and that he was unaware of his potential eligibility for disability benefits until he saw an advertisement for the program on television, should operate to suspend the application of the one year limitation on the payment of retroactive benefits. The court rejected

---

**2.** Plaintiff claims that it was not until July 1977 that she learned, from a friend, that she may be eligible for disability benefits under the social security laws (Tr. 7–8).

this contention, holding that "plaintiff's equitable arguments concerning incapacity, lack of publicity, or his treatment by social security interviewers at the time he filed his application" were irrelevant to a determination of entitlement to benefits where there is a "clear congressional intent to limit the payment of retroactive benefits" in § 423(b). *Id.* at 1099, 1102. In response to plaintiff's argument that § 423 of the Social Security Act should be liberally construed in favor of eligible claimants, the court stated:

> The word "construction" itself implies, in this context, the resolution of an ambiguity, and the liberal construction rule means nothing more or less than that real ambiguities in the meaning of the Act should, as a general rule, be decided in favor of the claimant. Where, however, there can be no doubt as to the import of the statutory requirements, there is no room for "construction," be it liberal or otherwise.

*Id.* at 1100.

The rationale of *Sweeney* is persuasive. Plaintiff's eight year delay in applying for disability benefits, resulting as it apparently did from her ignorance of the availability of such benefits,[3] is certainly unfortunate. The statutory requirements are, however, unambiguous and cannot be construed away by this court.

### III

The constitutional issues raised by plaintiff, imaginative as they may be, do little more than raise a smokescreen, clouding the less complex and more pertinent issues of this case, hitherto discussed. In essence, plaintiff claims that she has been deprived of property without due process of law, and that she has been denied equal protection of the law, in violation of the fifth amendment to the United States Constitution. The violations are caused by the government's alleged failure to "institute mandatory measures or procedures to insure transmittal of information to enrollees about the scope of the [Social Security] program's benefits." In the hope, perhaps, of adding to the lexicon of constitutional law, plaintiff has dubbed this purported violation "Transmittal Absence."

The due process claim may be summarized as follows: plaintiff argues that her interest in the receipt of disability insurance benefits, including retroactive payments, is a statutorily created "property" interest cognizable under the due process clause of the fifth amendment. Asserting that the "very bedrock of due process is notice,"[4] she contends that the statutory time limitation on the payment of retroactive benefits under § 423(b), as applied to those who are ignorant of their potential eligibility for disability benefits because of the government's alleged failure to publicize the program,[5] constitutes a denial of property without due process.

Plaintiff has built this house of cards on a rather weak foundation. In support of her contention that a potential beneficiary's interest in the fund is an accrued property right protected by the fifth amendment, plaintiff relies on *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). However, those cases involved the termination of benefits to persons who had met the eligibility requirements for such benefits, filed timely applications for the benefits,

---

**3.** The *Sweeney* court observed:

> Late filings have also not been excused where the claimant was illiterate or incompetent. *See* CCH Unemp.Ins.Rep. ¶ 12,555. It would seem to follow, *a fortirari* from such results, that an allegation of ignorance is also no excuse. *See Kurz v. Celebrezze, supra*, 225 F.Supp. 528 at 530.

379 F.Supp. 1101.

**4.** Plaintiff's Memorandum of Law at 10.

**5.** In light of my determination that plaintiff has not been deprived of a property interest within the meaning of the fifth amendment, I need not, and do not, reach the question of whether the Secretary of Health, Education and Welfare has failed to supply the public in general, and plaintiff in particular, with adequate information concerning the scope of the disability insurance program, and limitations on the payment of benefits thereunder.

and actually received benefits for a period of years prior to the termination.[6] In the present case, by contrast, plaintiff claims the accrual of a vested interest in disability benefits at the time of the onset of disability in July 1968–regardless of the date of the filing of an application for such benefits. *Flemming* and *Mathews* will be read in vain for their approval or endorsement of the proposition that plaintiff's highly speculative and contingent "interest" in the fund rises to the level of an accrued property right cognizable under the due process clause of the fifth amendment. *See Johnson v. United States*, 572 F.2d 697, 699 (9th Cir. 1978); *see also Flemming v. Nestor*, 363 U.S. at 608, 80 S.Ct. at 1371.

To aggrandize plaintiff's alleged interest in the fund, so that her claim to retroactive benefits somehow assumes constitutional significance, plaintiff quotes a statement by Justice Brennan in *Richardson v. Wright*, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), regarding the importance of disability benefits to the recipient. No indication is given that the quote is taken from a dissenting opinion by Justice Brennan, nor does plaintiff reveal that *Richardson* involved the summary suspension and termination of disability benefits to those who had been receiving payments under the program.[7] Moreover, plaintiff's characterization of the benefits as "indispensable" is less than compelling in view of her subsistence on welfare during the period in question. In *Mathews v. Eldridge*, where the Court recognized a right to due process protection for one already receiving disability benefits, but held that an evidentiary hearing was not required prior to an initial termination of payments, the Court stated:

> Only in *Goldberg* has the Court held that due process requires an evidentiary hearing prior to a temporary deprivation.

It was emphasized there that welfare assistance is given to persons on the very margin of subsistence:

> "The crucial factor in this context—a factor not present in the case of . . virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." 397 U.S. 254, at 264, 90 S.Ct. 1011, at 1018, 25 L.Ed.2d 287. (emphasis in original).

Eligibility for disability benefits, in contrast, is not based upon financial need. Indeed, it is wholly unrelated to the worker's income or support from many other sources, such as earnings of other family members, workmen's compensation awards, tort claims awards, savings, private insurance, public or private pensions, veterans' benefits, food stamps, public assistance, or the "many other important programs, both public and private, which contain provisions for disability payments affecting a substantial portion of the work force . . . ." *Richardson v. Belcher*, 404 U.S. 78, at 85–87, 92 S.Ct. 254, [at 259, 30 L.Ed.2d 231] (Douglas, J., dissenting). See Staff of the House Committee on Ways and Means, Report on the Disability Insurance Program, 93d Cong., 2d Sess., 9–10, 419-429 (1974).

424 U.S. at 340-41, 96 S.Ct. at 905.

Even assuming, *arguendo*, that the interest asserted by plaintiff is subject to constitutional protection, it would not follow that the application of the time limitations of § 423(b) to preclude the payment of retroactive benefits beyond July 11, 1976 is violative of the due process clause. In *Flemming v. Nestor, supra*, the Court stated:

> Instead, the Court remanded the matter to the district court with instructions that the Secretary of HEW be given an opportunity to reconsider the determinations in light of new regulations adopted by the Social Security Administration governing the procedures to be followed in determining whether to suspend or terminate the benefits.

---

**6.** In *Mathews v. Eldridge, supra*, the Court stated "that the interest of an individual in *continued receipt* of [disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." 424 U.S. at 332, 96 S.Ct. at 901. (citations omitted) (emphasis added).

**7.** The majority in *Richardson* never reached the merits of the plaintiffs' due process claims.

To engraft upon the Social Security system a concept of "accrued property rights" would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands.

\* \* \* \* \* \*

We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment.

\* \* \* \* \* \*

"Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom." *Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.*

363 U.S. at 610–11, 80 S.Ct. at 1372 (citations omitted) (emphasis added). *See also Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Morris v. Weinberger*, [1975–76 Transfer Binder] CCH Unemp.Ins.Rep. ¶ 14,261 (S.D.W.Va.1975); *Johnson v. Richardson*, 352 F.Supp. 18 (W.D.La.1972). As discussed *infra*, the time limitation prescribed in § 423(b) is neither "patently arbitrary" nor "utterly lacking in rational justification."

### IV

With respect to plaintiff's equal protection claim, Mitchell asserts that the classification embodied in § 423(b) discriminates between those with knowledge of the scope of the benefits available under the disability insurance program and those without such knowledge. Arguing that it is "the absence of notice which creates the classification," plaintiff contends that the "pivotal interest" at issue in the present case is not merely the receipt of disability benefits, but rather the "right of notice" of entitlement to such benefits. (Plaintiff's Memorandum of Law at 16–17). Coming full circle, Mitchell argues that the "infringement of a fundamental constitutional right (notice)" triggers a strict scrutiny analysis of § 423(b), and that the provision cannot be sustained unless it is narrowly drawn to effect a compelling governmental interest.

Implicit in plaintiff's argument is the notion that the asserted classification somehow is based on the economic position of a potential beneficiary, those with lower incomes being more likely to lack the knowledge of their possible eligibility for social security benefits. (*See* tr. at 7–8, ¶ 6; Plaintiff's Memorandum of Law at 2, 19). Thus, it would appear that plaintiff urges this court to expand the scope of equal protection by including wealth as a suspect classification.

The classification urged by plaintiff is without basis in law. Rather, the cases cited by plaintiff have implicitly or expressly rejected the opportunity to recognize classifications based on wealth for equal protection purposes. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). Plaintiff's reliance on *Shapiro, supra*, is particularly inappropriate, as there the right to interstate travel was deemed fundamental, and a burden thereon was held to trigger strict scrutiny. Potential beneficiaries of social security insurance are not denied benefits by changing jobs or geographical location; *Shapiro* is simply inapposite.

Assuming, *arguendo*, that there is a classification created by the statute in question, the limitation on the payment of retroactive disability benefits serves as a rational means of furthering a legitimate legislative end: the preservation of the social security fund's fiscal integrity. The 12 month limit, allowing as it does a reasonable period of time for discovery of one's potential eligibility is, in this court's view "rationally based and free from invidious discrimination."

*Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971), *quoting Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Defendant's motion for summary judgment is granted. Plaintiff's cross–motion for summary judgment is denied. The court will enter an order.