Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED that defendants' motion for reconsideration of part of this Court's order of September 28, 1983, be and is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' claims based upon section 301(a) of the LMRA, 29 U.S.C. § 185(a), be and is granted.

IT IS FURTHER ORDERED that plaintiffs' claims under section 301(a) of the LMRA be and are dismissed.

IT IS FURTHER ORDERED that plaintiffs' motion for sanctions against defendants be and is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for a default judgment be and is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to realign the Local as a plaintiff be and is granted.

IT IS FURTHER ORDERED that the Local be and is realigned as a plaintiff.

IT IS FURTHER ORDERED that defendants' motion for a status call be and is granted.

IT IS FURTHER ORDERED that the parties shall meet with the Magistrate, at a date, time, and place to be set by the Magistrate, for the purpose of identifying the remaining issues, organizing the future litigation of these remaining issues, and any other matters that would speed the resolution of this dispute. To facilitate said status call, the parties *shall* file with the Magistrate a brief memorandum outlining each party's view of the remaining issues, the remaining discovery, and the time frame in which this case can be disposed of. Said memorandum shall be filed within twenty-one (21) days of the date of this order. No extensions will be granted.

IT IS FURTHER ORDERED that defendants are granted until ten (10) days after the date of said status call to respond to plaintiffs' motion for summary judgment. Upon receipt of defendants' responses, the Magistrate shall again review plaintiffs' motion for summary judgment and make a recommendation to this Court on same.

IT IS FURTHER ORDERED that the parties to this dispute shall meet and confer within twenty-one (21) days of the date of this order with regard to settling this dispute. The parties shall report to the Magistrate the outcome of said settlement efforts at the status call.

Nelson BROWN, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 82 Civ. 8270 (RLC).

United States District Court, S.D. New York.

Nov. 28, 1983.

William C. Raines, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., New York City, for defendant; Jonathan A. Lindsey, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, Barbara L. Spivak, Deputy Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Nelson Brown filed this suit seeking review of a final determination of the Secretary of Health and Human Services denying his application for Social Security disability insurance benefits. 42 U.S.C. § 405(g). Plaintiff, who is now 60 years of age, received a 6th grade educa-

tion in rural South Carolina.[1] He was employed as a kitchen helper from the 1950's through 1974, at which time he began working as a pot washer in a cafeteria at the United Nations. He kept the latter job until March 16, 1981, when he fell at work injuring his lower back and right shoulder.

Plaintiff applied for disability benefits in July, 1981, claiming that he was unable to return to his work as a pot washer because the pain caused by his back injury prevented him from standing or walking for any length of time, or from lifting or carrying anything substantial. His work involved constant standing, frequent walking, bending and lifting of weights up to 60 pounds. His claim was denied, although he was found to be disabled, because the disability examiner determined that plaintiff's disability would not last for 12 months. 42 U.S.C. § 423(d)(1)(A). The denial was affirmed on reconsideration and plaintiff requested an evidentiary hearing before an administrative law judge.

The ALJ reversed the prior determination and held that plaintiff was entitled to disability benefits. The ALJ found that the pain induced by plaintiff's back and shoulder injuries left him with a residual functional capacity to perform only sedentary work.[2] As plaintiff is of advanced age, has a marginal education and has performed only unskilled labor, his restriction to sedentary work, the ALJ ruled, compels a finding that plaintiff is disabled. 20 C.F.R. Appendix 2, Rule 201.01.[3]

On its own motion, the Appeals Council reviewed and reversed the decision of the ALJ. While the Council did not question the ALJ's findings with respect to plaintiff's age, education or work history, it found that plaintiff's back injury did not significantly limit his ability to do basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying and handling, 20 C.F.R. § 404.-1521(b)(1), and that he was, therefore, not disabled. 20 C.F.R. § 404.1520(c). The Council's ruling was premised primarily on its disbelief of plaintiff's written declarations and oral testimony that he suffers severe, chronic back and shoulder pain which prevent him from returning to his job. The Council held that "the claimant's assertions of pain is [sic] not credible." (Tr. 8) In so holding, the Council expressly rejected the ALJ's ruling that "the medical evidence establishes that the claimant has severe back and shoulder pain..." and that "the claimant's testimony at the hearing was entirely credible." (Tr. 15)

In reviewing the Council's conclusion, the Court is not empowered to make a *de novo* determination. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The resolution of conflicts in the evidence is for the administrative agency, not the Court. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Flowers v. Harris*, 616 F.2d 776, 778 (5th Cir.1980). The sole question to be decided is whether the Council's finding that plaintiff does not suffer disabling pain is supported by substantial evidence based upon a consideration of the record as a whole. 42 U.S.C. § 405(g).

This standard of review is not altered by the fact that the Council reversed the findings of the ALJ, but "the fact that the same evidence yielded conflicting inferences merits consideration by the reviewing court." *Lazarus v. Weinberger*, 400 F.Supp. 378, 380–81 (E.D.N.Y.1975). The ALJ's findings constitute a significant part

1. The evidence shows, and the ALJ concluded, that plaintiff's reading and writing skills are minimal.

2. Sedentary work requires only occasional standing or walking, lifting no more than 10 pounds at a time, and occasional lifting or carrying of articles like docket files, ledgers or small tools. 20 C.F.R. § 404.1567(a).

3. Social Security Administration regulations define advanced age as 55 years of age or over, 20 C.F.R. § 404.1563(d), and marginal education as a 6th grade education or less. 20 C.F.R. § 404.1564(b)(2). The ALJ also ruled that even if plaintiff could perform light or medium work, in light of his age, education and work history, the appropriate regulations would direct a finding that he was disabled. 20 C.F.R. Appendix 2, Rules 202.01, 203.01; (Tr. 14).

of the record on which the Court's review is based and where, as here, an evaluation of the claimant's credibility lies at the heart of the case, the findings of the ALJ are especially important. *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 496–97, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951); *Marteney v. Weinberger,* 411 F.Supp. 828, 830 (N.D.W.Va. 1976); *Tucker v. Celebrezze,* 220 F.Supp. 209, 211 (N.D.Iowa 1963). The evidence supporting the Council's conclusion "may be less substantial when an impartial, experienced examiner who has observed the witnesses ..." has reached a conclusion as to a witness' credibility diametrically opposite that of the Council. *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. at 496, 71 S.Ct. at 468.

The Appeals Council indicated that plaintiff's complaints of pain are not to be believed because (1) they are inconsistent with the objective medical evidence; (2) plaintiff is able to take care of his own personal needs; and (3) plaintiff takes no painkilling drugs. The Court will examine each of these contentions in turn.

(1) The medical evidence cited by the Council shows that an x-ray of plaintiff's back was normal, that during one consultative examination plaintiff "was able to address the examining table with no observable difficulty," that plaintiff could raise his legs to 90° in a sitting position and that he had a full range of motion of his knees and ankles with no evidence of motor weakness or reflex change in his legs. (Tr. 7) While this evidence is not valueless, neither is it substantial when evaluated on the medical record as a whole.

Plaintiff underwent consultative examinations by two physicians. Dr. Barry Fisher reported that plaintiff was unable to toe or heel walk because of back pain, that he had pain on palpation of the lumbosacral spine, that he could forward flex only to 25°, and only with pain, and that he was suffering from low back strain secondary to traumatic injury. (Tr. 81–82) Dr. Aziz Gourji reported that plaintiff experienced pain when he descended three-quarters of the way into a squatting position, had pain on palpation of the lumbosacral spine, could stand on his toes or heels only with difficulty and suffered status post sprain of his lower back and post contusion of the right shoulder joint. (Tr. 83)

■ Even more important is the report of Dr. I.W. Eagle, who treated plaintiff twice a week for 6 months after his accident and who continues to see him every week. Special weight must be given to the report of Dr. Eagle, a treating physician who is intimately familiar with the patient's condition. *Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir.1974); *Chiappa v. Secretary of the Dep't of Health, Educ. and Welfare,* 497 F.Supp. 356, 359 (S.D.N.Y. 1980) (Sofaer, J.). Dr. Eagle diagnosed plaintiff as having a lumbosacral sprain resulting in persistent pain across the lower back, tenderness on palpation, restricted motion along all planes and painful paravertebral spasms. Of the three doctors who submitted reports, only Dr. Eagle directly addressed the limitations on plaintiff's physical activities and his ability to work. He concluded that plaintiff could lift or carry no more than 5 pounds, and that only occasionally, that he could never bend, squat, crawl or climb, and that the pain he suffers prevents him from performing his work as a pot washer. (Tr. 90–91, 94–99, 104–05).

(2) The Appeals Council also treated plaintiff's testimony that he "lives in a second story walk-up apartment, takes care of all personal needs, walks to the doctor's office [and] is able to use public transportation" as belying his testimony that he is in constant pain. (Tr. 7) Once again, the evidence is insubstantial when placed in context. Plaintiff testified that walking up stairs causes him pain and that he can leave his apartment only infrequently. (Tr. 35, 32) Prior to his accident he attended church three or four times per week and visited shut-in patients, but he can no longer do so. (Tr. 70) Plaintiff told the ALJ that he had used public transportation to reach the hearing office but that the motion of the subway car had caused him pain

which continued during the hearing. (Tr. 32) Although the Appeals Council found that plaintiff could take care of all his personal needs, the record shows that plaintiff cannot cook or clean because of the bending involved and he cannot shop because of the lifting and carrying. His sister and brother-in-law perform these chores for him. (Tr. 70, 32) In addition, he has difficulty dressing and undressing, tying his shoelaces and getting in and out of the bathtub. (Tr. 77)

(3) Finally, the Appeals Council relies on a particularly confused aspect of the hearing transcript for the proposition that plaintiff takes no medication for pain.[4] However, the most recent dated medical report in the record states that Dr. Eagle is prescribing analgesics (Tr. 95), and the one thing that does emerge clearly from the transcript is that plaintiff is taking over-the-counter analgesics. (Tr. 30) Moreover, regardless of which drugs plaintiff takes, the record shows that plaintiff is receiving weekly heat treatments for pain from Dr. Eagle and that he treats himself daily with hot towels, liniment and rubbing alcohol.

The fact that plaintiff does not use stronger painkilling drugs is not substantial evidence supporting the conclusion that he does not suffer pain which limits his ability to perform basic work activities. *See Candelaria v. Weinberger*, 389 F.Supp. 613 (E.D.Pa.1975).

Considering the medical evidence, plaintiff's written and oral statements and the opinion of the administrative law judge, the Court finds that the decision of the Appeals Council is not based on substantial evidence. Accordingly, the decision of the Appeals Council is reversed and the decision of the ALJ is reinstated. Plaintiff is entitled to a period of disability commencing March 6, 1981, and to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, as amended. 42 U.S.C. §§ 416(i) and 423.

IT IS SO ORDERED.

4. ALJ: We have a sheet indicating claimant's medication signed by Mr. Brown, but listing no medications. Mr. Brown, are you currently taking medication?
THE CLAIMANT: No. For my back, every once a week now.
ALJ: But are you taking any pills or medication?
THE CLAIMANT: Yes. I've been given medication pills.
ALJ: All right. Let me just leave that aside then.... (Tr. 19)
Q. During the week when you're at home, do you take any pills?
A. Oh, pills?
Q. For pain?
A. No, no I don't take no pills for this (inaudible)—no pills, no pain now, because—because he give me the hot treatment—heat treatment—he treat my back.
Q. Have you ever taken pills for pain since March of '81?
A. For pain? No, he don't give me no—he don't give me no pain—he don't give me—he give me treatment for the back, and I take, you know, (inaudible)—the pain in the chest. I take Bufferin or Contact or something, that helps, because I didn't have nothing to go to—I didn't have no place to get none of those—no medic—I mean, going and getting them—getting them shots and getting medi-

cation for myself. The doctor told me I wasn't able to—(inaudible) to get my social security. What did I do? I had to go—the doctor treat me for my back, so when this pain, I have to take Bufferin, and I take it. This is what I can do. But I see help, I take it. I got Bufferin (inaudible), when my head and when my chest hurt, and that's all, self, so I can go the easiest way, to delay it myself, because I just want to go to doctor once a week, because that's when I go—my back was hurting me for three weeks, and I was waiting for every week to go at the end of the week (inaudible) suffer too much, I don't. So (inaudible) go the easiest way, but (inaudible) he give me big—he give me medication for the fall, because I had it written, 15 chest and everything. Very large white capsules—I mean, I don't know what it was, very (inaudible) and very strong. I guess for the inside where it hurt. I was hurting on the inside. (Tr. 30–31)
Dr. Fisher's report contains the following:
Patient is being treated by the compensation doctor who prescribes a heat lamp treatment, approximately two to three times per week, as well as giving the patient oral medication. The patient cannot elicit the name of the medication; however, describes it as orange and white. (Tr. 81)