797 F.2d 624
 14 Soc.Sec.Rep.Ser. 355, Unempl.Ins.Rep. CCH 16,959
Laverne BOYD, Pamela Boyd, and William Boyd, Jr., Appellants,
v.
Otis R. BOWEN,* Secretary of Health and Human
Services of the United States, Appellee.
 No. 85-1532.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1986.
Decided July 24, 1986.
 
 David R. Hess, Clayton, Mo., for appellants.
 Joseph B. Moore, St. Louis, Mo., for appellee.
 Before HEANEY, ARNOLD, and WOLLMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Laverne Boyd and her two children brought this action to recover Mother's Benefits and Surviving Child's Benefits under 42 U.S.C. Secs. 402(d) and 402(g). The District Court[1] accepted the recommendation of the magistrate[2] that the Social Security Administration's denial of benefits be upheld. We affirm.
 
 I.
 
 2
 William Boyd, the husband of Laverne Boyd and father of Pamela Boyd and William Boyd, Jr., disappeared on October 2, 1976, while on a fishing trip with a companion on the Mississippi River. Searchers found the anglers' car and boat trailer at a launch site on the Mississippi, found their boat, which had capsized, at another point on the river, and, eventually, found the body of Boyd's companion, who had drowned. Boyd's body was never found.
 
 
 3
 In 1976, Missouri law provided for a presumption of death upon the passage of a seven-year period of unexplained absence. Missouri amended its law in 1981 to establish a five-year presumption-of-death period. R.S. Mo. Secs. 473.697, 490.620. On December 29, 1981, in a proceeding brought by Mrs. Boyd, a Missouri probate court issued an order that, as later amended, declares William Boyd presumed dead as of October 2, 1976, the date of his disappearance.
 
 
 4
 Shortly after her husband disappeared, Mrs. Boyd had been told by a local state-court judge, apparently in the course of an informal contact, that insurance benefits could not be paid until her husband was declared dead. Mrs. Boyd assumed she would be unable to apply for the benefits she seeks here for the same reason. ALJ Tr. at 69, Exh. 19. Consequently, Mrs. Boyd did not apply for these benefits until April 5, 1982. Her application was denied on consideration and reconsideration.
 
 
 5
 On April 29, 1983, after a hearing, an Administrative Law Judge (ALJ) denied Mrs. Boyd's claim for benefits on the ground that the plaintiffs did not meet eligibility requirements established by the Social Security Act. To be eligible for Surviving Child's Benefits, an application must be filed for the child of a deceased wage earner at a time when the child is under age 18, a full-time student under the age of 19, or under a disability that began before the child attained age 22. 42 U.S.C. Sec. 402(d)(1). To be entitled to Mother's Benefits, an applicant must have in her care a child entitled to Child's Benefits. 42 U.S.C. Sec. 402(g)(1)(E). Under 42 U.S.C. Sec. 402(j)(1)(B), applications have a six-month period of retroactive effect. The ALJ found that neither Pamela Boyd nor William Boyd, Jr., met the age requirements for Child's Benefits in the six months preceding Laverne Boyd's April 1982 application for benefits. Pamela, born January 5, 1961, was 15 when her father disappeared, but was 21 at the time of the application. William, Jr., born September 23, 1962, was 14 when his father disappeared, but was 20 at the time of the application. Neither child was a full-time student or under a disability. Because he found neither of the children was eligible for Child's Benefits, the ALJ further found that Mrs. Boyd was ineligible for Mother's Benefits.
 
 
 6
 On July 27, 1983, the Appeals Council denied Mrs. Boyd's request for review, and on September 29, 1983, she commenced this action.
 
 II.
 
 7
 Mrs. Boyd argues that the Administration's denial of benefits on the ground that her children were too old when she applied to meet statutory eligibility requirements violates the Due Process Clause of the Fifth Amendment because she was unable to obtain a Missouri death certificate until after her children had passed the Act's age limits. We think this contention falls short in several respects.
 
 
 8
 First, the eligibility requirements are not so irrational as to make them a violation of due process. Where social-welfare legislation conferring governmental benefits is concerned, Congressional line-drawing is afforded considerable deference by the courts:
 
 
 9
 [W]hen we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.
 
 
 10
 Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). See also United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 173-79, 101 S.Ct. 453, 458-61, 66 L.Ed.2d 368 (1980). Here, the requirement that application for benefits be made within six months of the expiration of the applicant's eligibility serves many of the same purposes that justify any statute of limitations. It enables the government to "preserv[e] ... the social security fund's fiscal integrity" by insuring that the Administration knows within a reasonable time frame what demands will be made on the fund. Mitchell v. Harris, 496 F.Supp. 230, 235 (D.N.J.1980). While we might imagine rules that are, in our view, wiser and more equitable, the "wisdom or unwisdom" of an eligibility requirement is a matter for Congress, not the courts, so long as there is, as here, a rational justification for the requirement. Flemming, 363 U.S. at 611, 80 S.Ct. at 1373.
 
 
 11
 Next, we note that Mrs. Boyd could have filed an application for benefits well before her children passed the Act's age limits. Mrs. Boyd is not correct in contending that it would have been futile for her to apply before Missouri's five-year presumption of death period had passed and she had obtained a Missouri declaration of her husband's death. Under 20 C.F.R. Sec. 404.702(b)(4) (1976) (current version at 20 C.F.R. Sec. 404.720(c) ), where "preferred evidence" of death, such as a death certificate or some similar official report, is unavailable, a claimant can explain why this evidence is unavailable and substitute other evidence of death. In the present case, Mrs. Boyd could have presented as evidence of her husband's death the fact that his fishing companion drowned, evidence of the locations in which the automobile and boat were discovered, the fact that the boat had at some point capsized, and evidence of her husband's lack of motive to feign death. The Administration could have concluded from this evidence that William Boyd had died October 2, 1976.
 
 
 12
 Of course, the Administration might also have legitimately concluded that this was insufficient proof of William Boyd's death. However, this would not have meant the end of Mrs. Boyd's application. Instead, 20 C.F.R. Sec. 404.957(c)(4) (1976) (current version at 20 C.F.R. Sec. 404.988(c)(4) ) establishes that a decision of the Administration can be reopened "at any time when ... [t]he death of the individual on whose account a party's claim was denied for lack of proof of death is established by reason of his unexplained absence from his residence for a period of 7 years." See 20 C.F.R. Sec. 404.705 (1976) (current version at 20 C.F.R. Sec. 404.721(b) ). Thus, even if we assume that the Administration would have rejected Mrs. Boyd's circumstantial evidence of her husband's death as inadequate, social-security regulations still provided a procedure through which she could have protected her and her children's interests.
 
 
 13
 The dissent argues, post pp. 628 - 629, that had Mrs. Boyd consulted social-security case law, it would have suggested that the proper course was to wait until seven years had passed to apply for benefits. However, the two cases the dissent cites, Lazarus v. Weinberger, 400 F.Supp. 378 (E.D.N.Y.1975), and Martin v. Heckler, 617 F.Supp. 1078 (S.D.Tex.1985), are at best tangential to Mrs. Boyd's case; neither speaks to the problem of a claimant whose children will exceed age limits on eligibility before seven years passes. Further, Martin was decided long after the time when Mrs. Boyd's hypothetical consultation of cases would have taken place, and does not indicate that a claimant without proof of death should wait seven years to apply. In Martin, the claimants applied the year after their father's disappearance; the Administration did not deny the application, but instead decided to abate consideration of it until seven years elapsed. This is essentially what would have happened had Mrs. Boyd filed a timely application.
 
 
 14
 Mrs. Boyd's five-and-a-half year delay in applying for benefits, a delay that resulted from her unfamiliarity with the law, is clearly unfortunate. Yet, her ignorance of applicable eligibility and procedural requirements does not render their application to her a due process violation. Indeed, even had Mrs. Boyd failed to apply in reliance upon erroneous information supplied by an Administration employee, the government could still insist upon compliance with its regulations, at least in the absence of some affirmative misconduct on the part of some government agent. See Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam). Here, Mrs. Boyd never contacted any Administration employee until 1982. While she did have informal contact with some local judge during which insurance was discussed, it does not appear that Mrs. Boyd explicitly discussed social security with him; instead, Mrs. Boyd represents only that what he said of insurance generally she assumed to apply to social security. ALJ Tr. at 69, Exh. 19.
 
 III.
 
 15
 Mrs. Boyd's and her children's due-process rights were not violated here, because Congress served a rational purpose in conditioning eligibility for the benefits at issue upon the filing of an application within six months of the date the applicant last met the other eligibility requirements, and because under the social security regulations the plaintiffs could have safeguarded their interest in receiving benefits by filing an application while they still met the other requirements.
 
 
 16
 Accordingly, the judgment of the District Court is
 
 
 17
 Affirmed.
 
 
 18
 HEANEY, Circuit Judge, dissenting.
 
 
 19
 I respectfully dissent. While the eligibility requirements may not be so irrational as to be violative of due process, I think the government should be estopped from insisting upon strict compliance. In my view, "hard and fast rules against estoppel of the Government are neither fair nor constitutionally required," Schweiker v. Hansen, 450 U.S. 785, 793, 101 S.Ct. 1468, 1473, 67 L.Ed.2d 685 (Marshall, dissenting) (1981), particularly where, as here, an eligible applicant loses social security benefits due to a judge's erroneous advice and confusing legal standards.
 
 
 20
 Soon after her husband's disappearance, a judge advised Mrs. Boyd that she could not expect to prevail on a claim until the statutory presumption of death had passed. Given this fact alone, Mrs. Boyd should recover benefits because "such preliminary advice is inevitably accorded great weight by applicants who--like [Mrs. Boyd]--are totally uneducated in the intricacies of social security law." Hansen, 450 U.S. at 794, 101 S.Ct. at 1474 (Marshall, dissenting).
 
 
 21
 Moreover, even if Mrs. Boyd had been familiar with social security law, her delayed application is reasonable. Case law suggests a timely claim would have been denied. See Lazarus v. Weinberger, 400 F.Supp. 378 (E.D.N.Y.1975); Martin v. Heckler, 617 F.Supp. 1078 (S.D.Tex.1985). In Lazarus, the wife applied for surviving childrens' insurance benefits two years after her husband's disappearance. She was told the application was premature, and advised to wait seven years from the date of his disappearance. She reapplied at that later date and was ultimately awarded benefits "retroactive to the applicable date." Lazarus, 400 F.Supp. at 383. In Martin, the claimant submitted a death certificate, issued by the Texas Department of Health's Bureau of Vital Statistics, as evidence of death. Her request for benefits was denied because the Secretary found that plaintiff's application could not be considered until seven years after the date of disappearance. The district court reversed, however, holding that the death certificate was sufficient proof of death. Martin, 617 F.Supp. at 1079. An examination of Lazarus and Martin would indicate that Mrs. Boyd should have deferred her application for benefits until seven years had elapsed or until she had proof of death. This is precisely the course she followed.
 
 
 22
 The only realistic alternative Mrs. Boyd had was to file her claim, watch it be denied and a final decision entered, and then reopen her claim pursuant to 20 C.F.R. Sec. 404.988(c)(4). While Mrs. Boyd might have been successful had she taken this route, it defies reason to expect her to have done so.
 
 
 23
 If Mrs. Boyd had examined the case law, she would have reasonably deduced that she had no alternative but to wait seven years before filing. The cases give no indication that a claimant, in Mrs. Boyd's position, should file immediately, expect her claim to be denied, and then reopen the claim seven years later. Only a close and careful examination of several social security regulations, taken together, would have revealed this procedure. It would be unreasonable to require a layman to undertake a detailed legal analysis in order to claim benefits to which she is so clearly entitled. I note that, to this date, there is not a single regulation which says that if a spouse disappears that the surviving spouse is under an obligation to file immediately or risk losing benefits.
 
 
 24
 Finally, it is important to note that if benefits are paid, the government will not be prejudiced: the benefits are clearly owed, there are no witnesses which have been lost, the age of the children is conceded, and there is no interest to be paid. Accordingly, I would reverse. Mrs. Boyd should be paid the benefits she and her children were entitled to as of October 2, 1976.
 
 
 
 *
 Otis R. Bowen is automatically substituted as a party appellee in the name, place, and stead of his predecessor, Margaret Heckler. See Fed.R.App.P. 43(c)(1)
 
 
 [1]
 The Hon. John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri
 
 
 [2]
 The Hon. David D. Noce, United States Magistrate for the Eastern District of Missouri