**Donna Jean BROWN, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. C88–719R.**

United States District Court,
W.D. Washington,
at Seattle.

April 5, 1989.

Jeffrey Spence, Seattle, Wash., for plaintiff.

William H. Rubidge, Tacoma, Wash., for defendant.

**ORDER REVERSING ADMINISTRATIVE DECISION AND REMANDING FOR THE ENTRY OF BENEFITS**

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff's objections to a Report and Recommendation by United States Magistrate Philip K. Sweigert. Having reviewed the Report and Recommendation, plaintiff's objections and defendant's response as well as the adminstrative record and the rest of the file in this case, and being fully advised, the court finds and rules as follows:

Plaintiff is a fifty year old woman who suffers from deep venous obstruction of her left leg. In September of 1986, she filed applications for disability insurance benefits and supplemental security income alleging the onset of disability on July 23, 1986. Her applications were denied upon initial review and after a hearing before an administrative law judge ("ALJ"). When the Appeals Council denied review, this appeal resulted.

In his Report and Recommendation on the merits of plaintiff's appeal, Magistrate Sweigert upheld the determination by defendant Secretary of Health and Human Services ("the Secretary") that plaintiff retains the capability to perform substantial gainful activity and, therefore, is not disabled. Although the magistrate appeared to accept plaintiff's treating physician's judgment that plaintiff is incapable of working full-time, he found sufficient evi-

dence to support the conclusion that the restrictions on plaintiffs' activities would not prevent her from doing substantial part-time work at her past occupation as a file clerk.

There is no dispute in this case that plaintiff's condition fails to meet the requirements for chronic venous insufficiency as listed in § 4.12 of Appendix 1 to Subpart P of 20 C.F.R. 404.[1] But there is also no dispute that she suffers from a severe deep venous obstruction in her left leg.

Nevertheless, the Secretary found that plaintiff retained the residual capacity to perform a full range of sedentary work. Having carefully reviewed the administrative record, the court does not find substantial evidence to support this conclusion.

The objective medical evidence includes a history of problems with venous obstruction of the left leg beginning in 1983. Administrative Record (A.R.) 185, 192. Plaintiff's medical records also reflect periodic complaints of pain and swelling. In March of 1987, plaintiff was admitted to the hospital for eleven days because of severe leg pain which was unresponsive to elevation and use of analgesics at home. A.R. 227–29. However, Dr. Colocousis, a specialist in vascular and thoracic surgery who has treated plaintiff since March of 1987, commented in a letter to plaintiff's attorney dated July 22, 1987 that "most of plaintiff's problems are subjective in nature and ... documentation in physical examination, while supportive, does not show severe changes as of yet in skin or subcutaneous tissue." A.R. 250.

But in January of 1988, Dr. Colocousis apparently revised his opinion based on new medical evidence. At that time, plaintiff underwent a venography which, according to Dr. Colocousis, showed "markedly abnormal" results. A.R. 275. In a letter to plaintiff's attorney, he stated that the results "show non filling of the deep ve-

nous system of the left leg implying long-standing occlusion" and that "[i]n spite of the relative lack of external physical manifestations of superficial venous disease, the results of this venogram provide new and very strong evidence supporting the conclusion that [plaintiff] does indeed have very severe disease of the left lower extremity." *Id.* In his opinion, her failure to show "serious external manifestations yet was the result of her diligent adherence to proper conservative medical management of this leg." *Id.*

Because the ALJ rendered his decision in November of 1987 before the venography was done, he did not take the results into account. Thus, he commented in his ruling that "[a]s one treating physician [Dr. Colocousis] noted, most of the claimant's problems are subjective in nature and her documentation on physical examination does not entirely support a lower extremity difficulty to a disabling level as there is no documentation of changes to the skin or subcutaneous tissue." A.R. 16. The ALJ also found that "[t]he claimant's complaints of leg pain and swelling and associated exertional limitations were not credible based upon the objective medical evidence." A.R. 18. But the results of the venography were before the Appeals Council when it denied review of the ALJ's decision.

Regarding plaintiff's activity level, the ALJ found that she "led a reasonably active lifestyle clearly within the sedentary range," A.R. 17, and that her impairment did not prevent her from performing her past work as a file clerk because, even though it involved some standing, walking and sitting, "[n]one of these exertional activities were performed in a continuous, uninterrupted manner." *Id.*

The ALJ did not specify whether he meant that plaintiff could do full-time sedentary work. If so, the court concludes, as did the magistrate by implication, that

---

1. In order to qualify under the listing, plaintiff's condition must match the following description:
   Chronic venous insufficiency of the lower extremity with incompetency or obstruction of the deep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy.
   Plaintiff does not exhibit any of the listed external manifestations of her condition.

there is no substantial evidence to support this determination. In the hearing before the ALJ, plaintiff testified about her daily activities. She stated that she spent eleven hours asleep, four hours walking and standing and one hour exercising as well as four hours lying in bed and four hours sitting up with her leg elevated. A.R. 56. She also reiterated her doctor's advice "not to sit with my leg dangling. I am not to stand for long periods of time. I'm either to be walking preferably or laying with my leg in the air." A.R. 39.

Reports from plaintiff's doctor support plaintiff's contention that the condition of her leg markedly restricts her activities. In a letter to plaintiff's attorney dated July 22, 1987, Dr. Colocousis stated that "I advised her not to sit or stand in one place for long periods of time ... I have instructed her to keep her leg elevated as much as possible during the day. This is necessary to promote venous drainage in the left leg and is necessary to keep her from having pain in the leg." A.R. 249. Dr. Colocousis further opined that "I do not think that she can sit or stand for any longer than one hour at a time during the day nor for a total of more than four hours during an eight hour work day. In my opinion, she is not capable of performing a full time job." *Id.*

In a more recent letter to plaintiff's attorney dated February 9, 1988, Dr. Colocousis repeated his conclusion that plaintiff "should stand or sit for no more than one hour at a time nor for any longer than four hours total during a given eight hour day." A.R. 275. He also stated his belief "that she should have regular periods of elevation of the left leg during any given day," and that "it is basically impossible for [plaintiff] to work at a full-time sedentary job. This is because almost any job would require that she spend a considerable amount of time either standing or sitting." *Id.*

The real question in this case is whether there is substantial evidence in the record to support the conclusion that plaintiff is capable of part-time work which would constitute substantial gainful activity precluding a finding of disability.

Plaintiff's most recent work history included a stint as a file clerk from January to September of 1985. During that time, she worked for a total of ten to twelve weeks through a temporary placement agency.[2] Plaintiff testified that "[t]he situation there was that if I was able to work I would call [the agency].... It was an on call situation.... [T]hey knew about my leg." A.R. 50. When asked how the work affected her leg, she responded that "all I did was to work and then back home and to bed. It's something that got me out, something I liked doing, but I found that I couldn't—if I'd had to continue, I couldn't have done it."[3]

Plaintiff's doctor's advice reinforces the conclusion that plaintiff's physical capabilities are very restricted. As noted above, he stated that she should not sit or stand for more than one hour at a time, and that she should sit and stand for no more than four hours out of an eight hour day. Finally, he advised frequent elevation of her left leg to prevent her condition from growing worse.

Relevant caselaw indicates that "the ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in 'substantial gainful activity.'" *Kornock v. Harris,* 648 F.2d 525, 527 (9th Cir.1980), *quoting Cornett v. Califano,* 590 F.2d 91, 94 (4th Cir.1978). Likewise, "[s]light work of an irregular spasmodic character, subject to frequent interruptions because of Plaintiff's ailment is not substantial gainful activity." *Kornock,* 648 F.2d at 527, *quoting Austin v. Celebrezze,* 230 F.Supp. 256, 259 (S.D.Tex. 1964). *See also Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983), in which the court stated that "[a] man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national econo-

---

**2.** According to plaintiff's testimony, she worked for six to eight weeks at Boeing and three to four weeks at First Interstate Bank. A.R. 50.

**3.** Plaintiff has made several unsuccessful work attempts since 1985, none of which lasted more than a few days before causing serious pain and swelling to her leg. A.R. 52, 272.

**1306**

my." *See also Shiner v. Heckler*, 608 F.Supp. 481, 484 (D.Mass.1985).[4]

In this case, the court finds no substantial evidence in the record to support the conclusion that plaintiff is capable of engaging in substantial gainful activity. At best, the record reveals that she is able to sit and stand for a maximum of one hour at a time and that even so, she must frequently interrupt her other activities to elevate her leg. Such a sporadic ability to focus on a given task would incapacitate her from performing even sedentary work like that of a file clerk.[5]

For the above-stated reasons, the court reverses the Secretary's determination and finds that plaintiff has been totally disabled since July 23, 1986.[6] This case is remanded to the Secretary so that he may award benefits in accordance with this Order.

---

4. The Secretary's own policies and regulations define sedentary work as requiring the capacity to sit for considerably longer than one hour at a time. For example, the Secretary's Office of Operational Policy and Procedures, Office of Disability Programs issued a policy statement, Number 79–20, in April of 1979 which provided that "all sedentary jobs would require that a worker have the capacity to remain seated *most* of the work day. *Therefore, an impairment which compels a worker to alternate standing and sitting at frequent and/or regular intervals would preclude his being able to perform sedentary work.*" (Emphasis added.)

In *Mazzella v. Secretary of United States Dep't of Health and Human Services*, 588 F.Supp. 603, 607 (S.D.N.Y.1984), the court rejected the Secretary's conclusion that plaintiff could perform sedentary work based on the finding that he could sit five hours per day. The court pointed out that, in defining the exertional requirements of sedentary work, the Secretary relied on the *Dictionary of Occupational Titles*, which provides that sedentary work implies the ability to sit for at least six hours in an eight hour work day. *See also Rivera v. Heckler*, 618 F.Supp. 1173, 1176 (S.D.N.Y.1985), the court applied the same standard to conclude that plaintiff, who could only sit for four hours in an eight hour day was not capable of sedentary work.

5. In his decision, the ALJ concluded that plaintiff's inability to sit or stand for long periods

would not inhibit her from performing her past relevant work as a file clerk because "[b]y the very nature of that work, it involves some standing, walking, and sitting. None of those exertional activities were performed in a continuous, uninterrupted manner." A.R. 17. Similarly, in its decision denying review, the Appeals Council stated that plaintiff was not capable of doing a job involving much walking and/or standing. Nevertheless, the Council went on to conclude that plaintiff retained the functional capacity to work as a file clerk in that, as plaintiff described it, the job "essentially involved equal parts of sitting and standing or walking." A.R. 6. There is no evidence, however, that the demands of a file clerk position could be orchestrated so as to correspond to the limitations on plaintiff's ability to stand or sit. There is also no evidence that work as a file clerk could accommodate plaintiff's need to elevate her leg.

6. According to Dr. Colocousis' letter of February 9, 1988, the venography performed on plaintiff's left leg in January of 1988 revealed evidence of a longstanding occlusion in the deep venous system. A.R. 275. The record does not reflect any significant change or deterioration in plaintiff's condition between 1986 and 1988 which would tend to support a later date for the onset of disability than plaintiff's claim of July 23, 1986.