Thomas KOSECK, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant.

No. 91–CV–0640E.

United States District Court,
W.D. New York.

Oct. 18, 1994.

Jeffrey Freedman (Kenneth R. Hiller, of counsel), Buffalo, NY, for plaintiff.

Patrick H. NeMoyer, U.S. Atty. (Jane B. Wolfe, Asst. U.S. Atty., of counsel) Buffalo, NY, for defendant.

## ORDER

ELFVIN, District Judge.

The Honorable Leslie G. Foschio, a Magistrate Judge in this judicial district, having considered the within Complaint and Answer pursuant to this Court's referral under 28 U.S.C. § 636(b)(1)(B) and having on September 28, 1994 filed his Report and Recommendation concerning such, and no objection thereto having been made, and the substance and rationale of said Report and Recommendation having been considered by this Court, it is hereby

***ORDERED*** that said Report and Recommendation is fully confirmed and this case is remanded to the Secretary for the sole purpose of computing benefits.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned for report and recommendation on October 10, 1991 by the Honorable John T. Elfvin, pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is presently before the court upon Plaintiff's motion for summary judgment, dated April 7, 1992, and Defendant's cross-motion for judgment on the pleadings, dated April 24, 1992.

### *BACKGROUND*

Plaintiff, Thomas Koseck, seeks review of the Defendant's decision denying him Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1988). In denying Plaintiff's application for benefits, Defendant determined that Koseck had the capability to perform a full range of sedentary work, and was, therefore, not disabled as defined by the Social Security Act. (R. 31).[1]

---

1. R. references refer to the page number of the administrative record submitted in this case for the court's review.

On October 3, 1991, Koseck filed an action seeking a determination that he was entitled to disability benefits. Koseck contends that the Defendant's decision was not supported by substantial evidence, and that it should be reversed. On April 7, 1992, Koseck filed a motion for summary judgment. Thereafter, on April 24, 1992, Defendant filed a cross-motion for judgment on the pleadings, seeking a dismissal of the action.

No oral argument was held on the matter.

## PROCEDURAL HISTORY

Koseck initially filed for disability benefits on August 30, 1989. The application was denied on November 21, 1989. Koseck filed a request for reconsideration on December 11, 1989, however, his application was again denied on February 15, 1990. Koseck appealed the determination.

On October 18, 1990, a hearing was held in Buffalo, New York before an administrative law judge ("ALJ") from the Office of Hearings and Appeals of the Social Security Administration, Department of Health and Human Services, regarding the denial of disability benefits. On January 17, 1991, the ALJ denied disability insurance benefits to Koseck. Koseck then requested a review of the hearing decision. On August 9, 1991, the Appeals Council concluded that there was no basis for granting the request for review, and determined that the decision of the ALJ was the final decision of the Social Security Administration.

Thereafter, on October 3, 1991, Koseck filed this action seeking review of the administrative decision. On April 7, 1992, Koseck filed a motion for summary judgment and memorandum of law, and, on April 24, 1992, Defendant filed a cross-motion for judgment on the pleadings, and a related memorandum of law in support of the motion.

The matter was referred to the undersigned on October 10, 1991. No oral argument was deemed necessary.

For the reasons as set forth below, I recommend that Plaintiff's motion for summary judgment be GRANTED, and that Defendant's cross-motion for judgment on the pleadings be DENIED.

## FACTS

As of October 18, 1990, the date of the hearing before the ALJ, Thomas Koseck was forty-six years old. (R. 50). Koseck lived with his wife in West Seneca, New York. (R. 51–52). Koseck had completed the tenth grade, and then entered the military service, receiving his high school equivalency diploma while in the service. (R. 52). His last job, which Koseck left in 1988, was that of a machinist at Gemcor Co. (R. 53). His job consisted of the setting up and running of all machine shop machinery, including reading blueprints, and doing layouts. (R. 53–54). Koseck, as part of his job, was required to lift heavy weight, such as vises which weighed approximately 60–65 pounds, and to shift weldments, welded assemblies of metal parts, which weighed approximately 150–250 pounds. (R. 54). Prior to working at Gemcor, Koseck also held a job as a machinist for Willard Machine. (R. 55).

While employed at Willard Machine, Koseck experienced swelling in his left knee, however, liquid was removed from the knee, eliminating most of the difficulty. (R. 60). At Gemcor, on March 26, 1984, while walking on boards in front of the machines, Koseck lifted a weldment, and then stepped off the edge of the board and twisted his right knee. (R. 60, 156). Koseck was examined by Dr. Owen W. Young, an orthopedic surgeon, on May 7, 1984, who found that Koseck was experiencing pain, despite the fact that X rays taken on April 9, 1984 and an arthrogram taken on April 17, 1984 showed no abnormalities. (R. 156–157). Dr. Owen recommended anti-inflammatory medication, and that, if no improvement was noted, further diagnostic tests should be performed. (R. 156). Koseck then returned to work, however, two weeks later he reinjured the knee while pushing a part. (R. 357). Koseck continued working until August 27, 1984 when he fell at work and jammed his right shoulder. (R. 237). During the fall, Koseck's right knee also buckled. (R. 234, 357). Koseck was diagnosed with tendinitis in his shoulder, and underwent physical therapy at Mercy Hospital. (R. 235–237). He also had cortisone shots in the right shoulder. (R.

236). While Koseck continued working, he periodically missed work because of the pain and discomfort in the knee and shoulder. (R. 357). On February 26, 1985, Dr. Allan D. Depew, an orthopedic surgeon, following his examination of Koseck, recommended an arthroscopic evaluation, to be followed by an arthroscopic procedure, if necessary. (R. 358). Dr. Daniel E. Curtin, an orthopedic surgeon, performed arthroscopic surgery on Koseck's right knee in April, 1985, and discovered a tear in the rotator cuff. (R. 151). In June, 1985, Dr. Curtin again operated on Koseck to remove bone spurs in his right toe. (R. 151).

On August 4, 1985, Koseck underwent surgery for the treatment of cervical disc disease. Dr. Vijay Kumar, a neurosurgeon, removed a disc for cervical fusion in the C5–C6 area. (R. 248). Despite the surgery, Koseck continued to have neck pain. (R. 151, 247).

On December 9, 1985, Koseck injured his left thumb at work, catching it between tubing and a machine. (R. 182). Then, on January 2, 1986, while lifting heavy objects, Koseck developed pain in his right forearm and elbow. (R. 182). He was examined by Dr. Curtin on January 24, 1986, who noted that Koseck was suffering from tendinitis in the right elbow and forearm, rendering him unable to work as of January 6, 1986, and that he continued to be disabled. (R. 182). Koseck also continued to see Dr. Kumar, who noted, on April 17, 1986, that he had had several injections for tendinitis of his right elbow with mixed results, and that the "background of discomfort" remained. (R. 245). Dr. Kumar prescribed Motrin, an anti-inflammatory drug, and Norgesic, a muscle relaxant, and ordered physiotherapy for his neck. (R. 245). Dr. Kumar noted that Koseck appeared to have "significant disability as a machinist," and that Koseck might have to undergo rehabilitation or modify his job. (R. 245). However, on June 3, 1986, Dr. Kumar stated that Koseck had appeared to improve following physiotherapy, although he noted that if Koseck's pain worsened or recurred after returning to work, he might need to modify his job description. (R. 244).

Meanwhile, on May 7, 1986, Koseck underwent arthroscopic surgery on his left knee performed by Dr. Depew. (R. 323). He subsequently again developed difficulty with his right shoulder, and underwent an arthroscopic debridement (a removal of dead or infected tissue) of a partial tear of the rotator cuff, and an excision of the acromioclavicle joint (the joint between the lateral triangular projection of the spine of the bone that forms the back of the shoulder and articulates with the clavicle) of the right shoulder in June, 1987. (R. 326). Later, on August 26, 1987, an arthrogram of the right knee showed additional tears of the medial meniscus (fibril-cartilage within a joint). (R. 350). Following the surgeries, on October 9, 1987, Dr. Depew stated that Koseck could return to restricted duties at work, but that he could not perform any repetitive overhead lifting. (R. 356). Koseck continued on physical therapy, and an examination on November 5, 1987 indicated that Koseck had a full active and passage range of motion in his right shoulder. (R. 355).

Dr. Clayton A. Peimer operated on Koseck's left arm on July 6, 1987. (R. 308). He performed a cubital (pertinent to the forearm) tunnel release, medican epicondylectony (removal of the inflamed tissue around the upper bone of the arm from elbow to shoulder), and the excision of the inflamed olecranon bursa (the connective tissue surrounding the elbow joint). In a follow-up examination on September 29, 1987, Dr. Peimer stated that the arm was healing well, but that Koseck would have difficulty with "sustained, repetitive heavy duties using the left upper extremity," but that he could perform "light and moderate bimanual tasks." (R. 306). Dr. Peimer further stated that, "frankly, I would hope that employment activities could suitably be found." (R. 306).

On November 26, 1987, Koseck fell three feet off a ladder in the kitchen, landing on his right forearm. (R. 354). His physical therapy for his shoulder was postponed until the swelling and soreness in the forearm lessened. (R. 354). Thereafter, as of December 28, 1987, Dr. Depew authorized Koseck's return to work on January 5, 1988, noting that if he was unable to handle a machinist's duties, he may need to resume further disability. (R. 353). Koseck returned to work

on January 11, 1988, working one and one-half days before having to leave because of increasing pain and discomfort, after repetitive hammering on an object in a vice. (R. 352). Koseck was then given permission by his supervisor to limit his work to six hours per day. (R. 351). By February, 1988, however, Koseck claimed he was unable to work. (R. 53, 55).

On February 10, 1988, Dr. Depew, following an examination of Koseck who had described "recurrent giving out episodes" in his right knee, stated that an arthroscopy for possible meniscectomy (removal of inflamed cartilage) and debridement of the right knee was required to be performed. (R. 350). Following surgery on the knee, on March 14, 1988, persistent pain and tenderness remained. (R. 348). Dr. Depew noted that the combination of the pain in the knee, the right shoulder, and the left elbow had made it difficult for Koseck to work a full forty-hour work week. (R. 348). Koseck was placed on physical therapy. (R. 347). At Koseck's follow-up examinations, he continued to complain of the knee "giving out," and of a "pinching" feeling in the knee, although examinations revealed that there was no knee effusion (an abnormal presence of blood or fluid), and that Koseck had full motion of the knee. (R. 345).

Koseck also complained of increasing soreness and weakness in his right shoulder. (R. 343). Dr. Depew noted that, because of the knee surgery, Koseck had not been able to continue with therapy, but he recommended physical therapy for the shoulder three times a week for four weeks. (R. 343). The condition improved following therapy. (R. 342). On June 28, 1988, Dr. Depew stated that, from the standpoint of Koseck's knee, he could return to work, however, because of difficulties with Koseck's right elbow and shoulder, such a return might not be possible. (R. 340–41). Koseck desired to return to work, despite extreme discomfort in his shoulder, only because all of his benefits had been terminated, and he had no income. (R. 340). Another surgery was performed on Koseck's right shoulder on November 7, 1988, to excise the outer end of the clavicle (collarbone). (R. 336). The pathology report

from that surgery noted that Koseck had a "clinical history of degenerative joint disease." (R. 204). While Koseck began physical therapy shortly thereafter, it was discontinued on January 17, 1989 when it was determined that no benefits were being gained, (R. 333). Koseck later underwent a surgical reconstruction of his right elbow on April 10, 1989 by Dr. Clayton A. Peimer.

After further follow-up examinations, Dr. Depew noted that Koseck had discomfort with attempts to lift his arms, but that he had full external and internal rotation. (R. 328). However, Dr. Depew stated that Koseck was undergoing evaluation through the Office of Vocational Rehabilitation for job retraining, and that "it would seem very difficult for this patient to return to his previous type of physical employment." (R. 328). Dr. Depew further recommended that Koseck be retrained for a sedentary type of occupation, noting that Koseck had residual disability in both his knees, and extreme discomfort with overhead motion of his shoulder, despite the ability for full motion in the shoulder. (R. 326–27).

Also, during 1989, Koseck was under the care of Dr. Naren Kansal, a neurosurgeon, for his neck problems. On August 28, 1989, Dr. Kansal found Koseck's neck movement to be limited, and diagnosed a cervical sprain. (R. 318). On a further follow-up examination, on September 29, 1989, Dr. Kansal found Koseck to be worse with physical therapy. (R. 317). Koseck had tingling and numbness in the thumb and index finger. Dr. Kansal stated that Koseck's X rays showed some degenerative joint disease and diminished space between vertebrae C6 and C7, and recommended surgery. (R. 317). However, a myelogram to determine the source of the pain was cancelled because of an allergy which Koseck had to the dye to be used in the test. (R. 146).

On October 27, 1989, in a report to the Office of Vocational Rehabilitation, Dr. Depew stated that Koseck had a poor prognosis for an improvement to his physical condition, and that Koseck could not perform any duty which required prolonged standing, walking, climbing, squatting, or the use of an extremi-

ty beyond 90 degrees of forward flexion. (R. 324).

At the time of the hearing, Koseck had bone spurs and arthritis in the main joints of both great toes, resulting in a restriction in his ability to walk. (R. 64). Koseck underwent surgery on his left great toe by Dr. Curtin on January 16, 1990 to remove bone spurs, but developed some minor complications which resulted in Koseck being found disabled by Dr. Curtin for his regular work. (R. 385–386). Koseck also had difficulty with both of his elbows, which resulted in surgical intervention. (R. 64, 314). During this time, Koseck also had an alcohol abuse problem, and admitted that at times he would drink up to 24 glasses of beer ostensibly to relieve his pain. (R. 152).

Koseck was diagnosed as having major depression, recurrent, and alcohol abuse by Dr. Rogelio Castillo, a psychiatrist, as a result of his medical difficulties and unemployment, along with serious marital problems. (R. 68, 389–90). Dr. Castillo prescribed Lithium and Prozac—Lithium to control mood swings, and Prozac to lift the depression. (R. 66–68, 71). Koseck took the medication for a while, however, he stopped taking the pills when he encountered certain minor side effects. (R. 69–70). Dr. Castillo found Koseck's prognosis to be "guarded, psychiatricwise," and noted that Koseck and his wife were going to work on their marital difficulties, and that Koseck was going to continue treating his alcohol problem with Dr. Castillo and other agencies, such as Alcoholics Anonymous. (R. 390).

Koseck states that he is unable to work because of severe pain, including stiffness in his neck, severe headaches, pain in both his arms, continuous pain in his right shoulder and elbow, and pain shooting down his left arm. (R. 57). Koseck claims that if he makes any quick movements the pain shoots down his arms as if he "grabbed an electric wire." (R. 57). Koseck is able to take care of his personal hygiene, and feed himself. (R. 58–59). He spends five to six hours each day watching television. (R. 73). He sleeps only approximately three hours per night, as a result of the pain. (R. 73). He performs certain chores, such as cutting grass, however-

er, he claims that for the next three or four days after such activity he is practically immobile, and that he requires medication and ice to relieve the swelling in his knees. (R. 61). Koseck stated that he used to do other household chores, such as doing dishes and laundry, but that he was unable to continue because he could not stand long enough to finish the chore. (R. 74). He sometimes goes grocery shopping alone or with his wife. (R. 74). Koseck also stated that if he is "relatively inactive" for a period of time, such as remaining seated, the pain does not subside, but the level of pain is not as "aggravated." (R. 62). Koseck noted, however, that he is only able to sit comfortably for approximately one half hour to forty-five minutes. (R. 77). Koseck also claimed that he was unable to push, pull, or lift without considerable pain. (R. 78).

Koseck mentioned that he had considered teaching machine shop as an occupation, however he believed that it would be too difficult for him to stand in front of a group of people and speak. (R. 76–77). He clearly stated that he would be unable to work at any job that required sitting six hours out of an eight hour day, as, in order to relieve the pain, he had to move positions whether standing or sitting. (R. 79–80). Koseck stated that, while at the first day of a sedentary job, he believed he would be able to complete certain tasks, the pain would get progressively worse over subsequent days, until he would reach the point where he would be unable to work at all. (R. 81–82). A Social Security disability evaluation was conducted by Christine M. Parry and Thomas P. Rick, both certified rehabilitation counselors, on May 20, 1991. During the six hour evaluation, Parry and Rick noted that Koseck "put forth an honest hard effort" throughout the evaluation process, (R. 17), but found that Koseck had significant physical limitations, limited concentration skills, and poor physical stamina, rendering him incapable of full-time employment. (R. 17). Parry and Rick found that Koseck would be limited to sedentary work on a part-time basis, as his physical work tolerance and stamina would prevent him from working in one position for more than one to one and one half hours, and

that he would be unable to work consistently on a sustained basis. (R. 17)

### DISCUSSION

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable:

> ... to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.... An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(1, 2).

■ Once the claimant proves that he is severely impaired and is unable to perform any past relevant work, the burden shifts to the Secretary to prove that there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

### I. Standard and Scope of Judicial Review.

The standard of review for courts reviewing administrative findings regarding disability insurance benefits, 42 U.S.C. §§ 401–433 (1988), is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ When the Secretary is evaluating a claim, he must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and ... educational background, age and work experience." *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983) (quoting *Miles v. Harris,* 645 F.2d 122 (2d Cir.1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.[2] *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

■ The Secretary's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas v. Schweiker, supra,* at 1550; 42 U.S.C. § 405(g) (1988); 42 U.S.C. § 1383(c)(3) (1993). "Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

The federal regulations set forth a five step analysis that the Secretary must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520, 416.920 (1993). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986); *Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982). The first step is to determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the individual is engaged in such activity the inquiry ceases and the individual cannot be eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities, as defined in the regulations. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.*

---

**2.** The treating physician's opinion is given greater weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983).

Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations, and meets the duration requirement,[3] the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d), 416.920(d), as, in such a case, there is a presumption that an applicant with such an impairment is unable to perform substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. 404.1520. *See also Cosme v. Bowen*, 1986 WL 12118, at *2 (S.D.N.Y. Oct. 26, 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Secretary must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Secretary will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (if the impairment(s) are not listed ones, claimant must show that he is without "the residual functional capacity to perform [his] past work"). If the Secretary finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Secretary bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative determination, the court must follow this five-step analysis to find if there was substantial evidence on which the Secretary based his decision. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

**1.  *Substantial Gainful Activity***

The first inquiry is to determine whether the applicant is engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties and is done for pay or profit." 20 C.F.R. § 404.1510 (1993).

In this case, the ALJ concluded that Koseck had not been engaged in substantial gainful activity since February 22, 1988, when he left his position at Gemcor Co. (R. 31). There is no dispute that Koseck has not been gainfully employed since that time.

**2.  *Severe Physical Impairment***

The next step of the analysis is to determine whether Koseck had a severe physical impairment significantly limiting his ability to do "basic work activities."

"Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Basic work activities" include:

> ... walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations.

20 C.F.R. § 404.1521(b)(1, 2, 3, 4, 5). Further, a physical impairment is severe if it "significantly limit(s)" the applicants' physical ability to do such basic work activities. 20 C.F.R. § 404.1521(a).

The ALJ concluded that Koseck had injuries to both knees requiring surgery, bilateral cubital tunnel syndrome, an injury to nerves in the forearm, and elbow tendinitis and bursitis, also requiring surgical intervention, a history of cervical discectomy (removal of herniated, intervertebral discs) and fusion with residual degenerative joint disease and disc space narrowing, degenerative joint disease of the right shoulder, requiring surgical intervention, degenerative joint disease of the right first metatarsal joint, and alcoholism with related situation depression and

---

**3.**  The applicant must meet the duration requirement which mandates that the impairment must

last for at least a twelve month period. 20 C.F.R. § 404.1509 (1993).

disturbed martial relations, (R. 31), and that there was substantial evidence in the record that Koseck suffers from significant pain because of his injuries.

The ALJ concluded that Koseck suffered from these degenerative joint conditions, and continued on to the next step, a finding whether Koseck's condition was severe enough to be set forth in the Listing of Impairments at Appendix 1, 20 C.F.R. 404, Subpart P, Regulations No. 4.

### 3. *Listing of Impairments, Appendix 1*

█ The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. 404, Subpart P. If the impairments are listed in the Appendix, they are considered severe enough to prevent an individual from performing any gainful activity. 20 C.F.R. § 404.1525(a). As stated above, the ALJ determined that Koseck suffered from significant pain. (R. 31). The ALJ, however, concluded that Koseck's physical and mental problems did not meet the criteria found in the Listing of Impairments found in Appendix 1. (R. 31).

Upon review, the court finds that substantial evidence supports the ALJ's position that Koseck's physical and mental difficulties did not meet the criteria in the Listing of Impairments.

According to the medical records, Koseck clearly had significant physical problems. Koseck suffered from degenerative joint disease, including difficulties with both knees, the great toes on both feet, his right shoulder, his neck, and both elbows and forearms. Koseck underwent several surgeries to correct these problems, along with submitting to physical therapy. In 1984, Koseck twisted his right knee at work and was treated with rest. Koseck returned to work, and then reinjured his knee when he fell and injured his right shoulder and neck. Koseck had cortisone injections in the shoulder, but the pain persisted. In April, 1985, Koseck underwent arthroscopic surgery on the right knee, and, in June, 1985, he had surgery to remove bone spurs from his right great toe. Thereafter, in August, 1985, Koseck had a disc removed for cervical fusion, with contin-

ued neck pain. A second operation on Koseck's right knee was performed by Dr. Depew in June, 1986. In November, 1986, Koseck was again injured at work, resulting in aggravated neck and lower back pain. Koseck underwent physical therapy and returned to work, however, in July, 1987, Koseck required arthroscopic surgery in his right shoulder. Another operation on his right shoulder to remove the AC joint was conducted in November, 1988. Koseck also had nerve entrapment surgery done on both elbows, the left in June, 1987, and the right elbow in April, 1989. Koseck underwent continual physical therapy, but discontinued the therapy pursuant to his doctor's recommendation, when the therapy ceased to help the pain.

Despite these continued orthopedic problems, the medical evidence supplied by Koseck does not require a finding that such evidence falls within any of the categories as set forth in Appendix 1. Section 1.04 of Appendix 1 states that there must be arthritis of one major joint in *each* of the upper extremities, noted by persistent joint pain and stiffness, signs of marked limitation of motion of the affected joints, and joint space narrowing, with less than ninety degrees of abduction and forward flexion of both arms at the shoulders. The medical evidence in this case reveals that Koseck has these symptoms in the right shoulder, but not the left shoulder. Therefore, the criteria of Section 1.04 cannot be met. Under Section 1.05, disorders of the spine, a claimant must have either arthritis manifested by a fixation of the cervical spine at thirty degrees or more, or osteoporosis, or other vertebrogenic disorders with pain, muscle spasm, and significant limitation of motion in the spine, plus appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. The medical evidence in this case reveals a narrowing of the space between vertebrae, and a history of degenerative disc disease in the cervical spine, but not of the severity to meet the criteria of Section 1.05. Therefore, Koseck's physical condition does not meet the severity of the Listing of Impairments.

As to Koseck's mental difficulties, the ALJ noted that Koseck suffered from alcohol abuse, first documented by pre-operative tests which showed elevated liver function and Koseck's own admissions, and later diagnosed by his treating physician, Dr. Castillo. Koseck was referred to Alcoholics Anonymous, and Koseck also agreed to attempt to help himself with the problem. Koseck was also diagnosed with major depression by Dr. Castillo. However, while Koseck was initially being treated with medication, including Xanax, Lithium, and Prozac, Koseck ceased taking the medication because of minor side effects. The ALJ found that Koseck's mental impairment was not of the degree of severity specified in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00.

Section 12.04 classifies affective disorders which are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. 404, Subpt. P, App. 1, § 12.04. A plaintiff may be found disabled if his mental condition satisfies the requirements of 20 C.F.R. Part 404, Appendix 1, Sections 12.04A (relating to clinical severity) and 12.04B (relating to functional severity). The required level of severity for these disorders is met when the requirements of both A and B are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. If both of these conditions are met, the Secretary will find the claimant disabled without consideration of age, education, or work experience. 20 C.F.R. § 404.1520(d).

Under 12.04A, as relating to depression, a claimant must show medically documented persistence, either continuous or intermittent, of depressive syndrome characterized by at least four of the following: (a) pervasive loss of interest in almost all activities, (b) appetite disturbance with change in weight, (c) sleep disturbance, (d) psychomotor agitation or retardation, (e) decreased energy, (f) feelings of guilt or worthlessness, (g) difficulty concentrating or thinking, (h) thought of suicide, or (i) hallucinations, delusions, or paranoid thinking. In this case, Koseck was examined by his treating physician, Dr. Castillo, along with an appointed psychiatrist, Dr. George Parlato. Dr. Parlato, in an ex-

amination on February 6, 1990, found that Koseck had a mild adjustment disorder, with mixed emotional features, and that any determination of disability should be based upon evidence other than psychiatric. (R. 365). Dr. Parlato stated that Koseck had trouble sleeping, but noted that Koseck had indicated that this was because of the pain he was experiencing, not from any agitated mental state. (R. 363). However, Dr. Castillo later examined Koseck four times during 1990, in April, May, June, and August, and found that Koseck suffered from major depression, recurrent, and alcohol abuse. Dr. Castillo stated that Koseck's prognosis was guarded, "psychiatric-wise."

After a review of the record, however, the court concludes that Koseck has not met the criteria under § 12.04A as there is not sufficient medically documented evidence that Koseck suffered from any of the criteria outlined in § 12.04A, except for feelings of worthlessness, as documented by Dr. Castillo when he stated that Koseck "was withdrawing from people and feeling very unloved." (R. 389). However, this is not sufficient to meet the criteria under § 12.04A, and, thus, Koseck's mental state cannot be considered to be so severe as to fall under the Listing of Impairments in Appendix 1.

Further, in order to meet the functional restrictions of § 12.04B, a claimant must show at least two of the following: (1) a marked restriction of activities of daily living, or (2) marked difficulties in maintaining social functioning, (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere), or (4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may includes deterioration of adaptive behaviors).

The ALJ found that the functional limitations posed by Koseck's depressive state were not of the severity specified in § 12.05B. The court agrees. As noted by the ALJ, Koseck was able to take care of his daily living needs, including personal hygiene, and shopping.

Further, although Koseck did experience substantial marital difficulties, he frequently went out with friends, and did not exhibit any other difficulty relating to friends or others. (R. 26). Accordingly, the court does not find that Koseck has a marked difficulty in maintaining social functioning.

As to deficiencies of concentration, while there is evidence in the record that Koseck did suffer from some deficiency in concentration, this deficiency was as a result of the pain of which he claimed to suffer, not because of mental distress. However, other than this fact, there is no evidence that Koseck suffers from such deficiencies of concentration, persistence or pace resulting in frequent failure to complete her tasks in a timely manner. Therefore, the court does not find that Koseck meets this third criteria.

Finally, there is no evidence in the record of any repeated episodes of deterioration or decompensation in work or work-like settings.

In summary, the ALJ concluded that Koseck's impairment, or any equivalents, was not so severe as to be encompassed by the Listing of Impairments as identified in Appendix 1 of the federal regulations. (R. 24).

■ However, an ALJ has a responsibility to address multiple impairments in combination, and to consider their cumulative effect in determining whether a claimant is disabled. *Williams v. Bowen*, 1988 WL 96015 at *6 (S.D.N.Y.1988). The ALJ must also consider the combined effects of non-severe impairments. *Felshina v. Schweiker*, 707 F.2d 71, 73–74 (2d Cir.1983). The presence of all impairments, even if one may not quite meet the listed level, could be equally disabling as a listed impairment. *Williams, supra*, 1988 WL 96015 at *7.

In this case, the ALJ considered Koseck's myriad of medical difficulties with his knees, arms, joints, shoulder, and discs, along with his alcoholism with related situation depression and disturbed marital relations, (R. 31, ¶ 3), but found that the combination of impairments was not medically equal with those in the Listing of Impairments. The court finds, although Koseck's combination of injuries is significant, that, using the criteria in

the Listing of Impairments, the combination of impairments was not so severe as to rise to the level of those in the Listing of Impairments. Koseck's impairments do not fall within the strict criteria of the Listing of Impairments, and the court finds that, in analyzing a possible disability, under the totality of the circumstances, it is necessary to also make a finding as to all of the relevant factors. Therefore, the court concludes that Koseck's impairments, in combination, do not alone require a finding of disability.

### 4. *"Residual Functional Capacity" to Perform Past Work*

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity. *Cosme, supra*, 1986 WL 12118 at *3.

The ALJ concluded that, because of Koseck's physical condition, he would not be able to perform his past relevant work as a machinist. (R. 31). This evidence is undisputed, and accordingly, the court finds that the ALJ's determination that Koseck was unable to perform his past relevant work is supported by substantial evidence.

### 5. *Suitable Alternative Employment in the National Economy*

■ As the ALJ concluded that Koseck was unable to perform his past relevant work, the ALJ went on to make a determination as to whether there was any position within the national economy for which Koseck would be qualified or suitable. As the ALJ specifically found, based on evidence in the record, that Koseck's impairments prevented him from performing his former work as a machinist, the burden shifted to the Secretary to prove that there was substantial gainful work that Koseck could perform in light of Koseck's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). Further, it is the clear rule in the Second Circuit that "all complaints ... must be considered together in determining ... work

capacity." *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir.1984). It is improper to determine a claimant's work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. *Gold v. Secretary of Health, Education, and Welfare,* 463 F.2d 38, 42 (2d Cir.1972).

In order to make such a determination, first, the Secretary must show that the applicant's impairment or impairments are such that permit certain basic work activities essential for other employment opportunities. *Decker v. Harris,* 647 F.2d 291, 294 (2d Cir.1981). The Secretary must prove by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Decker, supra,* at 294. An individual's exertional capability refers to the performance of "sedentary", "light", "medium", "heavy", and "very heavy" work.[4] *Id.*

In addition, the Secretary must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[5] *Decker, supra,* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy.

In this case, the ALJ determined that Koseck had the residual functional capacity to perform the full range of sedentary work, noting that Koseck had undergone many surgical procedures for orthopedic impairments, but finding no evidence that his problems with his knees, elbows, right shoulder, right first metatarsal joint, or cervical spine approach were severe enough to prohibit Koseck from performing suitable employment. Although the ALJ agreed that Koseck suffered from a history of degenerative disc and joint disease in the cervical spine, the ALJ found that there were no indications of fixation of the cervical spine or significant motor loss associated with these problems. (R. 25). The ALJ concluded that, as Koseck retained the major function of his four extremities, his condition was not severe. Accordingly, while the ALJ found that Koseck did suffer from chronic pain, he found Koseck's complaints to be "exaggerated and inconsistent with the findings and opinions of his treating physicians." (R. 30). The ALJ concluded that the totality of the problems relating to the pain did not leave Koseck with a residual functional capacity that did not allow Koseck to participate in some substantial gainful employment. The court finds that substantial evidence does not support the ALJ's findings.

■ Pain itself may be so great as to merit a conclusion of a disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings. *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983). However, for pain to be considered a disability, an impairment must first be diagnosed, and then the pain caused by the impairment may be found to be disabling even though the

---

4. "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5. The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra,* at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength.... primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 404.1568(b).

impairment ordinarily does not cause severe, disabling pain. *Gallagher, supra,* at 84. *See, e.g., Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir.1981) (pain caused by Marie–Strumpell type spondylitis); *Hankerson v. Harris,* 636 F.2d 893 (2d Cir.1980) (pain caused by heart disease); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979) (pain caused by osteoporosis). While subjective complaints of pain are not alone sufficient to support a finding of disability, such complaints must be accorded weight when they are accompanied by "evidence of underlying medical condition" and an "objectively determined medical condition [which is] of a severity which can reasonably be expected to give rise to the alleged pain." *Cameron v. Bowen,* 683 F.Supp. 73, 77 n. 4 (S.D.N.Y.1987). *See, e.g., Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir.1989) (where plaintiff's claim of disabling back pain was supported by objective clinical findings, such as narrowing of the discs, loss of ankle jerk, and paraspinal muscle spasm, claim was entitled to great weight).

In this case, the ALJ found that Koseck had the residual functional capacity to perform a full range of sedentary work, and that, in view of Koseck's age and residual functional capacity, the issue of transferability of work skills was not material. (R. 12). *See Jock v. Harris,* 651 F.2d 133, 134–135 (2d Cir.1981) (claimant who could not stand or walk for prolonged periods was not disabled from performing sedentary work and was therefore not disabled within meaning of Social Security Act). However, the court finds that the record does not support this finding. Clinical medical evidence showed that Koseck suffered from degenerative joint disease in his knees, elbows, neck and shoulder, with some narrowing of the discs, caused by work-related injuries beginning in 1984. As a result of these injuries, which were treated continuously with medication and surgical intervention, Koseck remained in chronic pain, documented by all of Koseck's treating physicians. An examination of Koseck's pharmaceutical records shows that Koseck was continually on pain-killing medication, such as Darvon and Codeine, along with anti-inflammatory medication, such as Naprosyn, although Koseck stated, at the time of the hearing, that he no longer took such medication as they did not help his symptoms. The ALJ interpreted these records to mean that Koseck only needed medication during periods of acute pain that later responded to surgical intervention, and that, based on the evidence, Koseck's complaints of severe pain were exaggerated. (R. 29). However, the record as a whole clearly shows that the surgeries did not resolve Koseck's difficulties, and that he remained in chronic pain. *See also Brown v. Heckler,* 576 F.Supp. 289 (S.D.N.Y.1983) (simple failure to use medication does not justify finding that condition has subsided). Further, there is evidence that Koseck's drinking problems were exacerbated by the pain as he drank to relieve the pain. (R. 76).

In the second prong of the analysis, the Secretary must evidence the existence of particular jobs available in the national economy practical for an individual limited to the applicant's abilities and transferable work skills. *Decker, supra,* at 296. Therefore, the ALJ was required to show substantial evidence that there was alternative employment for Koseck in the national economy.

The Medical Vocational Guidelines (the "grids") are often used to determine whether alternative employment exists in the national economy. *Decker, supra,* at 296; *Bapp v. Bowen, supra,* at 604. The grids combine several factors including education, work experience and age to determine whether a finding of "disabled" or "not disabled" should be rendered. *Id.*

In this case, the grids state that a person, such as Koseck, who is a younger individual between the ages of 45–49, who is a high school graduate, and whose previous work experience was skilled or semiskilled, would not be found disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, Rule 201.21, 201.22.

Accordingly, the ALJ determined that, as suitable employment existed in the national economy for Koseck, Koseck did not meet the fifth requirement for a finding of eligibility for disability benefits, and, as such, denied Koseck's claim for the benefits. In making

his determination, the ALJ referred to the grids to support his decision. While these guidelines should only be applied if the claimant's vocational factors and residual functional capacity is the same as the criteria found in the rule, *see* 20 C.F.R. § 404.1569 (1993), where the findings of fact with respect to an individual's age, education, work experience, and residual functional capacity coincide with all the criteria of a rule, that rule directs a conclusion as to whether an individual is or is not disabled. 20 C.F.R. § 416.969. *See also Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). If there are any discrepancies between the guidelines and the claimant's profile, all relevant facts are to be considered in light of the vocational considerations outlined in 20 C.F.R. §§ 404.1560–404.1569a. *Bapp v. Bowen, supra,* at 605.

The ALJ referred to Rule 201.21 and 201.22 of the regulations which provide that individuals between the age of 45 and 49 who are high school graduates and with previous work experience of a skilled or semiskilled nature are not found to be disabled. 20 C.F.R. Pt. 404, Subpart P, App. 2, §§ 201.21, 201.22 (1993). The ALJ also referred to Rules 201.27–201.29 which provide that individuals between the age of 18 and 44 with a high school level education and skilled or semiskilled work experience are not to be found disabled, although at the time of the hearing, Koseck was 46 years old. According to Table 1 of Appendix 2, *supra,* all persons considered to be younger individuals would be required to have their claims for disability benefits denied. Therefore, Rules 201.27–201.29 also direct that § 201.00(h) be reviewed. In § 201.00(h), the regulations state that a "finding of disabled is not precluded for those individuals under the age of 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work." However, in this case, the ALJ found that Koseck was able to perform the full range of sedentary work.

In this case, there is not substantial evidence in the record to support the ALJ's conclusion that Koseck can perform sedentary unskilled work. Since the ALJ determined that Koseck would be able to be employed in positions which were sedentary in nature, the ALJ found Koseck not to be disabled. The court does not agree. To sustain her burden, the Secretary must proffer specific medical evidence that the plaintiff can meet the exertional demands necessary to maintain sedentary work. *Nelson v. Bowen,* 882 F.2d 45, 48 (2d Cir.1989). Such work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (1993). A sedentary job requires "that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task." 20 C.F.R. § 404.1567(a) (1993).

■ The ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work. *Ferraris v. Heckler,* 728 F.2d 582, 586–87 (2d Cir.1984). In *Martin v. Shalala,* 1994 WL 263818 (W.D.N.Y.1994), the court reversed the ALJ's decision, finding that there was insufficient evidence in the record to show that the plaintiff, who suffered from a right knee disorder, arthritis of the hips with concomitant complications, and pain, was able to perform sedentary work. The court found insufficient evidence of the plaintiff's ability to sit for long periods of time, noting that three out of four of the plaintiff's treating physicians did not express an opinion as to whether the plaintiff could perform all of the activities and exertions necessary for sedentary employment. *Martin, supra,* 1994 WL 263818 at *5. In remanding the case for further fact-finding, the court noted that "pain itself can be disabling, and it is incumbent on the ALJ to evaluate the effect of pain on the claimant's ability to function." *Martin, supra,* 1994 WL 263818 at *5 (quoting *Foster v. Heckler,* 780 F.2d 1125, 1128 (4th Cir.1986)).

In this case, there was ample evidence that Koseck suffered from significant medical problems. Koseck's treating physicians diagnosed him with degenerative joint disease, and his chronic pain was well-documented. While the ALJ found that Dr. Depew, in 1989, had indicated that Koseck would be able to perform sedentary work, evidence shows that, by 1991, his physical work tolerance and stamina would prevent him from working in one position for more than one to one and one half hours. (R. 17). Diagnosis of a degenerative disease suggest that a claimant may well be more impaired at a later examination than at an earlier one. *Havas v. Bowen,* 804 F.2d 783, 786 (2d Cir. 1986). The ALJ discounted Koseck's claims of debilitating pain, concluding that they were exaggerated and inconsistent with the findings of his treating physicians. The court disagrees, finding that the diagnoses of Koseck's physicians correspond exactly with the symptoms of pain suffered by Koseck. The evidence shows that Koseck, a machinist for twenty-two years, attempted, from the onset of his injuries in 1984 until the time he left work four years later in 1988, to remain working, and that he only left his employment when he was physically unable to continue. *See, e.g., Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir.1994) (long seventeen year work history supported claimant's credibility regarding pain). The ALJ's argument that, sporadically through the record, there is evidence that Koseck did outside work with ladders, shovelled snow, or other activities, showing that Koseck's pain was not so severe is not persuasive as, following Koseck's attempts at these activities, there is evidence that he suffered from significant pain. (R. 279). Koseck's treating physician, Dr. Depew, stated, in 1989, that Koseck could perform sedentary work from an "orthopaedic standpoint," (R. 326), but did not speak to the issue of stamina, *i.e.,* the capacity to work for sustainable periods, nor did he specifically opine as to Koseck's work ability from a neurological viewpoint. As noted, in a later vocational evaluation, it was found that Koseck did not have the capacity to work for any sustainable period.

Finally, Defendant argues that Koseck is able to perform part-time sedentary work, and, therefore, he is not disabled. In *Mazzella v. Secretary of Health and Human Services,* 588 F.Supp. 603 (S.D.N.Y.1984), which held that a plaintiff was not capable of sedentary work where medical evidence determined that the plaintiff could not sit for more than three hours in an eight hour workday, the court stated that it was "troubled by the Secretary's conclusion that plaintiff was not 'disabled' because he could engage in part-time sedentary work." *Mazzella, supra,* at 607. While citing the case asserted by Defendant in this case in support of its position that part-time work is substantial gainful activity, *see Burkhalter v. Schweiker,* 711 F.2d 841, 844–45 (8th Cir.1983), the *Mazzella* court noted that other courts had held that the ability to work a few hours a day or to work only on an intermittent basis is not the ability to engage in substantial gainful activity. *Mazzella, supra,* at 607 (citing cases). As the court in *Mazzella* reminded, " 'substantial gainful activity' means the performance of substantial services with reasonable regularity in some competitive employment.... Complete helplessness is not necessary to a finding of an allowable disability." *Mazzella, supra,* at 608 n. 4.

In this case, in an earlier vocational rehabilitation study of Koseck, conducted by Elizabeth Bauer of Comprehensive Rehabilitation Associates, Inc. in 1989, Bauer stated that Koseck, if prospective work areas were available, may be ready for employment if "eventual placement in these prospective training areas is feasible." (R. 155). Koseck's latest examination by a certified rehabilitation specialist, in 1991, showed that Koseck was unable to work consistently on a sustained basis because of his physical impairments, and that Koseck would not be able to work in one position for more than one and one-half hours. An impairment which compels a worker to alternate standing and sitting at frequent and/or regular intervals precludes him from being able to perform sedentary work. *Brown v. Bowen,* 710 F.Supp. 1303, 1306 n. 4 (W.D.Wash.1989). *See also Nelson v. Bowen, supra,* at 49 (sedentary work implies that persons cannot stand or sit at will).

Accordingly, the evidence does not support the ALJ's finding that Koseck is not disabled within the meaning of the law.

### CONCLUSION

Based on the foregoing analysis, I recommend that Plaintiff's motion for summary judgment be GRANTED, and that Defendant's motion for judgment on the pleadings be DENIED. Further, I recommend that this action be remanded to the Secretary for the sole purpose of computing benefits.

DATED: September 28, 1994

Buffalo, New York